Johnny **KLEVENHAGEN**, Sheriff of Harris County, Texas, and Harris County, Texas, Appellants

v.

**INTERNATIONAL FIDELITY INSURANCE COMPANY**, Allegheny Mutual Insurance Company, National American Insurance, American Bonding Company, Connie T. Murray, Steve Cruz, Sunny S. Annuzzi, Carol B. Burns, E. DeLachica, Jim Coghlan, Richard T. Mackintosh, Edd Blackwood, Carl Guillory, Clement Romeo, John Burns, Gramercy Insurance Company d/b/a Allied Bonding Agency, and Abba Indemnity Company d/b/a Santana Bonding, Appellees.

No. 01–92–00684–CV.

Court of Appeals of Texas, Houston (1st Dist.).

Aug. 5, 1993.

Frank E. Sanders, Houston, for appellants.

Roger Moore, Carl R. Pruett, Houston, for appellees.

Before OLIVER–PARROTT, C.J., and MIRABAL and COHEN, JJ.

## OPINION

COHEN, Justice.

We must decide whether TEX.REV.CIV.STAT. ANN. art. 2372p–3, § 6(f)(3) (Vernon Supp. 1993), requires corporate sureties to post letters of credit securing 100 percent of the face value of bail bonds. We hold it does not.

The facts are undisputed. On January 27, 1992, the sheriff of Harris County, Johnny Klevenhagen, notified all corporate sureties writing bail bonds in Harris County that, pursuant to article 2372p–3, section 6(f)(3), he would not accept their bonds unless they were secured to 100 percent of face value by an irrevocable letter of credit.

Appellees, corporate bail bondsmen in Harris County, won a temporary restraining order to prevent the enforcement of the sheriff's policy. Appellees also sought a permanent injunction against the sheriff's new policy and a declaratory judgment requesting an interpretation of section 6(f)(3). After two evidentiary hearings, the trial judge enjoined the sheriff from refusing to accept bail bonds tendered by corporate sureties "on the basis that they have not posted an irrevocable letter of credit for an amount sufficient to satisfy any possible or potential judgment, vis-a-vis a final judgment or forfeiture." The judgment did not declare or interpret the meaning of section 6(f)(3). Harris County and Sheriff Klevenhagen now appeal that judgment. They assert the trial judge erred because section 6(f)(3) plainly requires such collateral.

The Bail Bond Act governs this case. Article 2372p–3 allows both individuals and corporations to make bail bonds. Section 6 prescribes licensing requirements. Section 7 prescribes specific rules for corporate sureties. In pertinent part, those sections read:

### Application and issuance of license

Sec. 6. (f) Upon notice from the board that the application has been tentatively approved, the applicant shall then:

(1) deposit with the county treasurer of the county in which the license is to be issued a cashier's check, certificate of deposit, cash, or cash equivalent in the amount indicated by the applicant under Subdivision (5) of Subsection (a) of Section 6 of this Act but in no event less than $50,000 except in counties with populations of less than 250,000 persons by the most recent federal census, the amount for applicants in said counties shall be $10,000 to be held in a special fund to be called the bail security fund; or

(2) execute in trust to the board deeds to the property listed by the applicant under Subdivision (4) of Subsection (a) of Section 6 of this Act, which property shall be valued in the amount indicated on an appraisal by a real estate appraiser who is a member in good standing of a nationally recognized professional appraiser society or trade organization that has an established code of ethics, educational program, and professional certification program, but in no event less than $50,000 valuation, except in counties with populations of less than 250,000 persons by the most recent federal census, the amount for applicants in said counties shall be $10,000, the condition of the trust being that the property may be sold to satisfy any final judgment forfeitures that may be made in bonds on which the licensee is surety after such

notice and upon such conditions as are required by the Code of Criminal Procedure, 1965, as amended, in bond forfeiture cases; the board shall file the deeds of trust in the records of each county in which the property is located, and the applicant shall pay the filing fees.

*(3) If the licensee is a corporation, it shall furnish to the sheriff an irrevocable letter of credit as a cash equivalent to satisfy any final judgment of forfeiture that may be made on any bonds on which the corporate licensee is surety.*

(g) No bondsman may execute, in any county, bail bonds that in the aggregate exceed 10 times the value of the property held as security on deposit or in trust under Subsection (f) of this section. A county officer or employee designated by the board shall maintain a current total of the bondsman's total liability on bonds in force, and no further bonds may be written by or accepted from the bondsman when the limit is reached. When a bondsman's total liability on judgments nisi reaches two times the same amount as he has on deposit as security, no further bonds may be written until the bondsman posts additional security as required in this subsection. A bondsman whose license is effective may, at any time, by posting additional security, increase the bondsman's limit.

(h) The cash deposit or the funds realized from the trust shall be used to pay the final judgments of any bail forfeitures that result from the licensee's execution of a bail bond, if the licensee fails to satisfy the judgment within 30 days after a final judgment of forfeiture. When any sums are depleted from the deposit or trust to pay a judgment resulting from a forfeited bond, the licensee shall, as a condition to continuing as a licensee, replenish the amount so depleted up to the amount of the required minimum deposit to secure other bonds in force. When the licensee ceases to engage in the business of executing bail bonds and ceases to maintain his license, he may withdraw his security deposit or trust upon presentment of a release by the board, if there are no judgments or bond liabilities, either actual or potential, outstanding against the license. Any portion of the deposit or trust not used to pay judgments or to secure unexpired obligations on existing bonds in force shall be returned to the licensee or his heirs or assigns upon presentment of a release by the board.

## Corporation as surety

Sec. 7. (a) Wherever in this Act any person is required or authorized to give or execute any bail bond, such bail bond may be given or executed by such principal and any corporation authorized by law to act as a surety. When any such corporation authorized by law to act as a surety undertakes to be a surety on a bail bond, such corporation, before being acceptable as a surety on a bail bond, shall be required to meet the applicable requirements prescribed by Section 6 of this Act before being acceptable as a personal surety on a bail bond; Subsection (g) of Section (6) does not apply to a corporate surety.

(b) The certificate of authority to do business in this state issued to a corporation by the State Board of Insurance pursuant to Article 8.20, Insurance Code, as amended, shall be conclusive evidence as to the sufficiency of the security, the corporation's solvency, or its credits....

(e) It shall be the duty of the board to notify promptly the State Board of Insurance of default by a corporation on any financial obligation which it undertakes in the county.

TEX.REV.CIV.STAT.ANN. art. 2372p–3, §§ 6–7 (Vernon Supp.1993) (emphasis added).

■ This appeal turns on the interpretation of section 6(f)(3). Appellants argue the statutory scheme should be construed as follows: sections 6(f)(1) and (2) apply to individuals and corporations whose applications have been tentatively approved, and requires them in counties of 250,000 or more to deposit $50,000 in cash or property as financial security. We agree. Appellants further argue that section 6(f)(3) also requires corporate sureties to furnish, in addition to the $50,000 collateral, a letter of credit covering 100% of the face value of every bond written. The attorney general agrees with this interpretation. *See* Op.Tex.Att'y Gen. No. JM–

1245, n. 4 (1990). We disagree with appellants and with the attorney general.

■ When interpreting a statute, we may consider the consequences of a particular construction, and we presume the legislature intended a fair, rational, and reasonable result. *Metropolitan Transit Authority v. Plessner*, 682 S.W.2d 650, 653 (Tex.App.—Houston [1st Dist.] 1984, no writ). Appellants' construction of section 6(f)(3) would cause unreasonable results. It assumes the legislature believed the risk of loss on corporate bonds was so great that corporate sureties should fully collateralize every cent of their bonds. No corporation could or would write bonds if forced to fully collateralize every one. Bail for criminal defendants would soon become unavailable except through individual bondsmen. That result would be neither fair nor reasonable.

■ We doubt the legislature intended to regulate corporate sureties out of the bail bond business, thus reducing the availability of bail in this state. That contradicts the Act's declaration of policy, "to provide reasonable regulation to the end that the right to bail be preserved...." TEX.REV.CIV.STAT. ANN. art. 2372p–3, § 1 (Vernon Supp.1993). Although appellants rely on it, the bill analysis accompanying S.B. 727 *does not show any* legislative intent to regulate corporate sureties more strictly than individuals. The bill analysis expresses concern about uncollected forfeitures, but it does not once mention corporate sureties. Thus, the Attorney General concluded that the legislative history was "silent" regarding section 6(f)(3). Op.Tex. Att'y Gen. No. JM–1245, n. 4 (1990). The section by section portion of the bill analysis says nothing about any change brought about by section 6(f)(3).

Moreover, two parts of section 7 suggest the legislature intended for corporate sureties to post less collateral than individual sureties, not more. First, acting as surety on a bail bond has long been considered to be engaging in the business of insurance, and the only corporations authorized to do so are those with a certificate of authority from the State Board of Insurance. *See* TEX.INS.CODE ANN. art. 1.14–1, §§ 2(a)(2) and 3(b) (Vernon Supp.1993); TEX.CODE CRIM.PROC.ANN. art.

17.06 (Vernon 1977); *Freedom, Inc. v. State*, 569 S.W.2d 48, 48–49 (Tex.Civ.App.—Austin 1978, no writ). Section 7(b) dictates that the Insurance Board's certificate shall be "conclusive evidence as to the sufficiency of the security, the corporation's solvency, or credits." If the legislature intended to require corporations to post dollar-for-dollar collateral, it would not have enacted section 7(b). No evidence of security, solvency, or credits is needed if bonds are secured 100 percent by irrevocable letters of credit.

Second, the language of section 6(f)(3) must be read as a whole. Section 6 is titled "Application and Issuance of License." Section 6(f)(3) reads as follows:

> Sec. 6.
>
> (a) ...
>
> (f) Upon notice from the board that the application [for a license] has been tentatively approved, the applicant shall then:
>
> (1) [post $50,000 in cash or cash equivalent]; or
>
> (2) [execute property deeds to the board in the amount of $50,000].
>
> (3) If the licensee is a corporation, it shall furnish to the sheriff an irrevocable letter of credit as a cash equivalent to satisfy any final judgment of forfeiture that may be made on any bonds on which the corporate licensee is surety.

TEX.REV.CIV.STAT.ANN. art. 2372p–3, § 6 (Vernon Supp.1993).

Subsection 3 is the third requirement in a series stating what an appellant must "then" do after being notified its license has been tentatively approved. At this point, the corporate surety has no bonds to collateralize because its license has only just then been "tentatively approved." The tentative approval is contingent on meeting the requirements of section 6(f)(1) and (2). *See* TEX. REV.CIV.STAT.ANN. art. 2372p–3, § 7(a) (Vernon Supp.1993). Subsection 3 is not a freestanding requirement. Its placement at the end of a colon series means it should be construed along with the predicate phrase of section 6(f). Construing subsection 3 together with section 6(f), we view it as a predicate requirement for making a "tentative" license

permanent. In order to view it as a 100 percent collateral requirement, we would have to ignore the predicate words of section 6(f) that precede the colon. That would be both bad grammar and bad statutory construction.

In sum, if section 6(f)(3) requires corporations to fully collateralize, then sections 7(a) and (b) would have no purpose or effect. Because we must presume the legislature intended all sections of a statute to have a purpose, we conclude that appellants' interpretation is unsound.

■ Finally, in construing a statute, we may consider the common law or former statutory provisions. TEX.GOV'T CODE ANN. § 312.005 (Vernon 1988). The common law and the former provisions of the Act do not support appellants' interpretation of section 6(f)(3).

Before the 1973 enactment of article 2372p–3, a corporation's certificate of authority issued from the State Board of Insurance was conclusive proof of the sufficiency of the security, and a local sheriff could not require further proof before approving the corporation's bond. In *International Fidelity Ins. Co. v. Sheriff of Dallas County.*, 476 S.W.2d 115, 119–20, (Tex.Civ.App.—Beaumont 1972, writ ref'd n.r.e.), the sheriff questioned the security of a corporate surety who held a certificate of authority from the State Board of Insurance. 476 S.W.2d at 117. The court recognized that the legislature had made comprehensive revisions to the bail bond statutes in 1965, and those revisions continued to permit two types of sureties on bail bonds: individuals and insurance companies. *Id.* at 118. The statutory scheme made local officials who approved the bond responsible for checking the security of individuals, but made the State Board of Insurance responsible for checking the security of insurance companies. *Id.* at 119. The court reasoned:

> The question of compliance with the laws with reference to solvency was entrusted to the Commissioner of Insurance, and an elaborate statutory scheme of regulation was adopted for insurance companies such as is involved here.... [W]e are driven to

the conclusion that the legislature entrusted to the State Board of Insurance the qualification of an insurance company to become surety upon a bail bond. It is manifest from a reading of the statutes on the subject, both those in the Insurance Code and in the Code of Criminal Procedure, that the legislature did not intend that every justice of the peace, sheriff, judge of a corporation court, and other type of magistrate in Texas, would have such power.

The expertise necessary to determine the solvency of an insurance company is not ordinarily found in sheriffs or judges, however sincere each may be. Instead, the determination of solvency is a matter for determination by experts employed by the Commissioner of Insurance. If the mechanism is faulty, if the amount of the deposit required is insufficient, if there be abuses of the system, such are matters for the attention of the legislature, not the courts.

476 S.W.2d at 119.

That different treatment of corporate and individual sureties changed, however, when the legislature first enacted the Bail Bond Act in 1973. TEX.REV.CIV.STAT.ANN. art. 2372p–3, §§ 1–16.[1] Under that version of the Act, any individual or corporate surety had to obtain a license from the County Bail Bond Board. Sections 5–6. Upon notification by the Board of tentative approval, the applicant had to place with the county $5000 in cash or $10,000 in property. Section 6(d). Any corporation with a certificate of authority from the State Board of Insurance could write bail bonds, provided it also met the Act's requirements for individuals. Section 7(a). Unlike the preexisting law, the corporation's certificate of authority from the State Board of Insurance was *not* evidence of the sufficiency of a corporation's security, and the county *could* require further evidence of solvency before approving the bail bond. Section 7(b). Further, the sheriff could refuse a bond if he believed the security was insufficient. Section 4.

---

1. Act of May 7, 1973, 63rd Leg., R.S., ch. 550, §§ 1–17, 1973 Tex.Gen. Laws 1520, 1527.

Interpreting this 1973 version of the Act, courts held that sheriffs had the discretion to require additional security on a bond, even if the bondsman was a corporation with a certificate of authority from the Board of Insurance. *See, e.g., Thomas v. International Fidelity Ins. Co. of Newark,* 579 S.W.2d 252, 253 (Tex.Civ.App.—Dallas 1979, no writ) (sheriff who placed companies on a specific deposit-to-liability ratio limit could require insurance company to post security for bail bonds in addition to the $5,000 then required by section 6(d)(1) of the Act).

In 1981, however, the legislature once again amended the Act, extensively rewriting several provisions.[2] The legislature chose to return to a scheme where the State Board of Insurance was responsible for checking the security of corporate sureties. For example, the language in section 4 of the 1973 Act that gave the sheriff the discretion to refuse to accept a bond was deleted in the 1981 Act. Moreover, the 1981 amendments significantly changed the law governing a corporation as surety. The 1973 version of section 7 read:

(a) ... When any such corporation authorized by law to act as a surety undertakes to be a surety on a bail bond, such corporation, before being acceptable as a surety on a bail bond, *shall be required to meet the same requirements an individual is required to meet....*

(b) The certificate of authority to do business in this state issued to a corporation by the State Board of Insurance pursuant to Art. 8.20, Insurance Code ... shall *not* be conclusive evidence as to the sufficiency of the security, the corporation's solvency, or its credits; *and if the court or officer taking the bail bond is not fully satisfied as to the sufficiency of the security offered by the corporation, further evidence shall be required before approving the bail bond.*

(Emphasis added.)

On the other hand, the changes to section 7 enacted by the 1981 amendments provided:

(a) ... When any such corporation authorized by law to act as a surety undertakes to be a surety on a bail bond, such corporation, before being acceptable as a surety on a bail bond, shall be required to meet the applicable requirements prescribed by Section 6 of this Act before being acceptable as a personal surety on a bail bond; *Subsection (g) of Section 6 does not apply to a corporate surety.*

(b) The certificate of authority to do business in this state issued to a corporation by the State Board of Insurance pursuant to Article 8.20, Insurance Code, as amended, *shall be* conclusive evidence as to the sufficiency of the security, the corporation's solvency, or its credits.

(Emphasis added.)

In sum, the 1981 amendments removed the sheriff's discretion to question a corporation's security; no longer required a corporation to meet the same requirements as an individual; deemed the certificate of authority from the State Board of Insurance to be conclusive evidence of the sufficiency of the corporation's security, its solvency and its credits; and deleted the provision allowing local officials to require corporations to show further evidence of security before the bail bond could be approved. Those amendments remain intact today.[3]

These changes show the legislature's intent to once again give the State Board of Insurance the exclusive authority to determine the sufficiency of the security, the solvency, and the credits of corporations acting as bondsmen. Corporate sureties are treated differently than individual sureties because they are required to have a certificate of authority from the State Board of Insurance. *Freedom,* 569 S.W.2d at 48–49. The history of the Act demonstrates that the legislature intended for the county to determine the financial strength of individual sureties, while the State Board of Insurance determines the financial strength of corporate sureties. Thus, given the historical relation-

---

2. Act of June 8, 1981, 67th Leg., R.S., ch. 312, § 1, 1981 Tex.Gen.Laws 875, 887.

3. The legislature amended the Act again in 1985, 1987, and 1989. The only amendments relevant to this appeal, however, changed sections 6(f)(1) and (2) by raising the minimum deposit of cash or property to $50,000 in counties with a population of 250,000 or more.

ship between corporate bondsmen, the State Board of Insurance, and county officials, section 6(f)(3) should not now be construed to allow the sheriff to demand dollar-for-dollar collateral from a corporate surety.

Appellants assert that if the legislature intended to give the State Board of Insurance such exclusive authority, then section 6(f)(3), which requires corporations to furnish the sheriff an irrevocable letter of credit, would have no meaning. We disagree.

While appellants interpret section 6(f)(3) as a requirement that corporations must meet *in addition* to sections 6(f)(1) and (2),[4] appellees contend the legislature intended corporations to meet the requirement of section 6(f)(3) *in lieu* of sections 6(f)(1) and (2). Using italics to illustrate their interpretation, appellees read section 6(f)(3) as if it said:

> *In lieu of the requirements of Section 6(f)(1) and 6(f)(2),* if the licensee is a corporation, it shall furnish to the sheriff an irrevocable letter of credit *in the same minimum amount as that specified in those sections for individuals, which shall be used* as a cash equivalent to satisfy any final judgment of forfeiture that may be made on any bonds on which the corporate licensee is surety.

Appellees contend the legislature intended section 6(f)(3) to be only the minimum initial licensing requirement for corporate sureties; it is the counterpart to the deposit or trust required of an individual surety by sections 6(f)(1) and (2). We agree.

Sections 6(f)(1) and (2) operate as follows: in counties with populations over 250,000, section 6(f) requires an individual applicant to (1) deposit $50,000 in cash or a cash equivalent, or (2) execute in trust the deeds to property worth $50,000. Section 6(h) then defines the purpose of that deposit or trust: that fund "shall be used to pay the final judgments of any bail forfeitures that result

from the licensee's execution of a bail bond, if the licensee fails to satisfy the judgment within thirty days after a final judgment or forfeiture."

Likewise, section 6(f)(3) imposes similar requirements on a corporate surety. Under 6(f)(3), a corporate surety must furnish an irrevocable letter of credit as a minimum cash equivalent, whose purpose is "to satisfy any final judgment of forfeiture that may be made on any bonds on which the corporate licensee is surety." That purpose is identical to the purpose of the individual's deposit or trust required by sections 6(f)(1) and (2). Thus, section 6(f)(3) is the financial security requirement for corporations.

But unlike sections 6(f)(1) and (2), section 6(f)(3) does not specify the amount of the letter of credit corporations are required to post. The most reasonable construction would impose the same deposit requirement for corporate sureties as for individuals in section 6(f)(1) and (2). Thus, we construe section 6(f)(3) to require a $50,000 letter of credit.[5]

Appellants claim this interpretation would allow corporate sureties, who are exempt from the 10 percent ratio an individual must maintain, to deposit $50,000 and assume millions of dollars in bond obligations. We agree. Appellants contend that would defeat the legislative intent of requiring all bondsman to provide adequate amounts of cash surety. With that contention, we disagree.

The legislature, in section 7(a), specifically exempted corporations from the 10 percent deposit ratio it imposed on individual sureties. That, however, does not mean counties are unprotected from defaults by corporate sureties. The legislature, in section 7(b), mandated that the certificate of authority to do business issued by the State Board of Insurance "shall be conclusive evidence as to the sufficiency of the security, the corpora-

---

4. As support for this proposition, appellants cite Tex.A.G.Op. JM–1245, p. 6632 n. 4 (1990). That opinion letter stated; "The section 6(f)(3) requirement applies after the issuance of bonds in contrast to the financial security requirements of section 6(f)(1) and (2), which must be satisfied upon the tentative approval of the application to issue bonds." That conclusion, however, was made in one sentence in a footnote, with no analysis or support, and was not the subject of the opinion letter. Thus, especially in light of the history behind the Act, we do not find it to be persuasive authority.

5. In counties with less than 250,000 persons, the amount would be $10,000.

tion's solvency, or its credits." The legislature vested the State Board of Insurance with the responsibility of determining the sufficiency of companies as sureties, *see generally* TEX.INS.CODE ANN. art. 1.04(b) (Vernon Supp.1993), and established an elaborate statutory scheme of regulation. *See* "Subchapter B. Casualty Insurance and Fidelity, Guaranty and Surety Bonds," TEX.INS.CODE ANN. art. 5.13 (Vernon 1981). Only after compliance with the Insurance Code and the deposit of $50,000 in cash or securities with the state treasurer will the State Board issue a corporation a certificate of authority to do business. *See* TEX.INS.CODE ANN. art. 8.05 (Vernon 1981). Thus, the corporate surety must deposit twice as much as the individual—$50,000 with the state treasurer and $50,000 with the county. The State Board of Insurance provides the intended protection.

Moreover, the legislature provided a mechanism to notify the State Board of Insurance of defaults by those it regulates. Section 7(e) states: "It shall be the duty of the [Bail Bond Board] to notify promptly the State Board of Insurance of default by a corporation on any financial obligation which it undertakes in the county." TEX.REV.CIV.STAT. ANN. art. 2372p–3, § 7(e) (Vernon Supp. 1993). Finally, in some instances, counties may refuse to accept a bond from a corporation regardless of any action by the State Board of Insurance. Section 14A of the Act mandates that "a corporation that is in default on five or more bonds in a county may not act as a bail bondsman in that county." TEX.REV.CIV.STAT.ANN. art. 2372p–3, § 14A(a) (Vernon Supp.1993). Thus, our construction of section 6(f)(3) does not leave counties unprotected.[6]

In sum, we conclude that the sheriff's construction of section 6(f)(3) is inconsistent with the legislative purpose and intent behind the statute, and inconsistent with the historical treatment of corporations as sureties on bail bonds. We hold that section 6(f)(3) does not grant the sheriff authority to require corpo-

rate sureties to post a dollar-for-dollar letter of credit before approving a bond. The trial judge correctly enjoined that action.

Instead, we interpret section 6(f)(3) to be the initial minimum licensing requirement for corporate sureties; it is the counterpart to the deposit or trust required of an individual surety by sections 6(f)(1) and (2). As such, because Harris County's population exceeds 250,000, section 6(f)(3) requires that, upon tentative approval of its application, a corporation furnish a $50,000 irrevocable letter of credit to satisfy any final judgments of forfeiture.

We overrule points of error one through four and affirm the judgment.

---

6. TEX.INS.CODE ANN. art. 7.19–1(b) (Vernon Supp. 1993) also provides that if any bond is in an amount in excess of 10 percent of the surety company's capital and surplus, the county officer may require, as a condition of accepting the bond, written certification that the surety company has reinsured the portion of the risk that exceeds 10 percent of the company's capital and surplus. On request, the Board of Insurance shall furnish the amount of the company's allowed capital and surplus.