### HARRIS COUNTY BAIL BOND BOARD, Appellant,

v.

### Carol BURNS, Appellee.

### No. C14-93-01089-CV.

Court of Appeals of Texas, Houston (14th Dist.).

June 30, 1994.

Opinion Clarifying Decision and Overruling Motion for Rehearing Aug. 11, 1994.

Frank E. Sanders, Houston, for appellant.

J. M. Monks, Houston, for appellee.

Before ROBERTSON, CANNON and DRAUGHN, JJ.

## OPINION

ROBERTSON, Justice.

This appeal comes to us from the trial court's ordering the Harris County Bail Bond Board (Board) to reinstate appellee's bail bond license. Appellant brings seven points of error complaining that the trial court's decision was erroneous because appellee was in violation of the statutory scheme regulating her work as a bail bondsman. We will reverse the judgment of the trial court and render that appellee's license application be refused.

Appellee's license to write bail bonds expired on March 11, 1993. When appellee timely presented an application for renewing the license before it expired, the Board rejected the application. In response, appellee filed an original petition, an application for a temporary restraining order, and an ancillary order for temporary injunction. The trial

court granted the temporary restraining order and denied the application for a temporary injunction. After a two-day bench trial, the trial court ruled that no legal reason prevented the license from being renewed and entered a judgment that the license be renewed.

The Board's first three points of error are discussed together and address the following reasons which it asserts precluded a renewal of the application: that appellee had an unsuperseded final judgment that was more than thirty days old at the time of trial; that this outstanding judgment rendered incorrect the trial court's conclusion of law that no legal reason existed to refuse the license; and that such finding by the trial court was against the great weight and preponderance of the evidence.

A statutory scheme exists that governs the licensing and regulation of bail bondsmen (Act). TEX.REV.CIV.STAT.ANN. art. 2372p–3 (Vernon Supp.1994). The statute provides that from the Board's denying appellee's application, appellee's appeal was by trial de novo to the district court. *See id.* art. 2372p–3, § 11 (stating appeal from board decision is "by trial de novo, as in proceedings appealed from justice to county courts"). Thus, the proceedings in the district court consist of both sides presenting evidence as if for the first time for the trial court to make its own determination based on the evidence before it. *See State Board of Morticians v. Cortez,* 160 Tex. 532, 333 S.W.2d 839, 841 (1960) (stating appeal from justice court to county court is appeal de novo and sets aside order of body from which appeal was taken); *State Board of Ins. Comm'rs of Texas v. Fulton,* 229 S.W.2d 652, 654 (Tex.Civ.App.—Waco 1950, writ ref'd n.r.e.) (stating appeal from justice to county courts is a trial de novo with parties tendering evidence and does not mean only substantial evidence review). Thus, the Board's decision to refuse to renew the license is not entitled to the deference otherwise required in the limited appellate review under the substantial evidence standard of review. *See generally Big Spring Firemen's Relief & Retirement Fund v. Comm'r,* 808 S.W.2d 608, 610–13 (Tex. App.—Austin 1991, no writ) (discussing different standards of review of administrative decisions). The Board's complaint centers around the trial court's conclusion of law. In reviewing on appeal a conclusion of law, we will uphold such conclusion if the judgment can be sustained on any legal theory supported by the evidence. *Nelkin v. Panzer,* 833 S.W.2d 267, 269 (Tex.App.—Houston [1st Dist.] 1992, writ dism'd w.o.j.). The Board urges that this conclusion of law was erroneous because appellee had a final judgment outstanding for more than thirty days for which no supersedeas bond had been filed. This condition is listed in the statute as a reason for which the board may refuse, suspend, or revoke a license. TEX.REV.CIV.STAT. ANN. art. 2372p–3, § 9(b)(6) (Vernon Supp. 1994).

The Board presented evidence before the court, as defendant's exhibit number 51, that showed a writ of execution following a final judgment for $5000 against Carol Burns and Cesar Mosquera. Appellee argues that a computer print-out, current as of the date of trial, July 12, showed appellee having no monetary judgment amount due and owing. However, the evidence at trial from a representative of the Board explained this discrepancy by noting this particular final judgment was listed on the print-out, but showed an amount of zero because it was on appeal. However, because no supersedeas bond had been filed, appellee had still not fulfilled the terms of the statute.

Although the statute provides that such outstanding final judgment is grounds for refusing a license, the parties disagree as to the meaning of the word "may" in the provision listing the reasons for which "the board may, after notice and hearing, suspend or revoke a license." According to appellee's argument, the "may" indicates a discretionary act, meaning it was within the trial court's discretion to renew the license despite the outstanding judgment. This interpretation creates such illogical results that we cannot accept this interpretation. Under appellee's interpretation, the board, or the trial court in this case, could choose to issue a license by ignoring any or all of the following facts listed under section 9(b): the fact that a bondsman is insolvent or bankrupt; that he

is in violation of any section of the Act; that he falsely represented information to the board in a license application; that he is mentally incompetent; that he is soliciting business in the jails, falsifying records, or writing bonds without a license to do so. The Act's purpose as set out in section one would be completely eviscerated by our condoning the board or the trial court in permitting bankrupt or mentally incompetent persons to continue to operate as bondsmen, whose business the Act deems to be in the public interest aimed at securing the appearance of the accused. TEX.REV.CIV.STAT.ANN. art. 2372p–3, § 1 (Vernon Supp.1994).

■ Appellee proffers another argument we find inconsistent with the Act as a whole. Appellee argues that even if she did have a judgment for $5000 that had become final and had not been paid for thirty days, that the security the Act requires she maintain would be sufficient to cover that judgment; therefore, she could not technically be said to have an unpaid final judgment. Appellee finds support for her argument in a section of the Act that requires that the cash deposit or "funds realized from the trust be used to pay the final judgments of any bail forfeitures that result from the licensee's execution of a bail bond, if the licensee fails to satisfy the judgment within 30 days after a final judgment of forfeiture." TEX.REV.CIV. STAT.ANN. art. 2372p–3, § 6(h) (Vernon Supp. 1994). The Act further provides that the bondsman must replenish the security deposit in order to continue writing bonds. *Id.* We find we cannot construe this provision as appellee argues because of its inconsistency with other sections of the Act. The general rule for statutory construction requires that we presume each provision of a statute was intended to be effective; therefore, we may not interpret one section in such a manner that it contradicts another. TEX.GOV'T CODE ANN. § 311.021 (Vernon 1988).

Appellee's interpretation would directly conflict with the previously discussed section that permits a county's bail bond board to revoke or suspend a license for having outstanding, unsuperseded final judgments for over thirty days. The Act does not condition this statement with any reference to the bondsman's ability to pay the judgment out of his security. Section 9 places on the bondsman an affirmative responsibility to pay outstanding judgments, and section 6 supplements this requirement by dictating how such judgments are to be satisfied if and when the bondsman takes the appropriate steps to satisfy the overdue, outstanding judgment. Appellee's argument would result in the undesirable potentiality in which a bondsman could be permitted to have up to the entire amount of the security deposit in unsuperseded final judgments more than thirty days old, which in this case could reach an amount of $100,000. Appellee's interpretation would have the Act condoning a situation where the monetary basis upon which the bondsman is empowered to write bonds could be completely eroded. Such result is incongruous in the face of the Act's many provisions aimed at ensuring the stability of a bondsman's finances and permitting a bail bond board to require detailed disclosure of those finances. *See, e.g.,* TEX.REV.CIV.STAT. ANN. art. 2372p–3, § 6(a)(4) (Vernon Supp. 1994) (stating requirement of listing nonexempt real estate conveyed in trust to board); *id.* § 6(a)(4)(B) (requiring statement from property's taxing authority that no tax liens exist on property); *id.* § 6(a)(4)(E) (requiring spouse of applicant for license to execute deeds conveying interest in community property pledged to board); *id.* § 6(a)(5) (requiring disclosure of cash value amount of certificates of deposit pledged to board); *id.* § 6(a)(6) (requiring complete sworn financial statement).

We would also mention here the inadequacies of the Act in addressing another situation presented by the instant case. Appellee's husband, John Burns, has a license to write bonds but had at the time of trial outstanding judgments on his license number amounting to $479,000. The Board states it initially rejected appellee's application for her failure to list her husband's name as an employee of the business. However, when appellee filed her original petition, she submitted an amended application correcting this omission. Thus, at the time of the trial de novo, the prior omission held no weight and could not constitute a misrepresentation. However, the Board suggests that the in-

volvement of appellee's husband in the daily workings of appellee's bail bonding business presents a valid reason for rejecting her renewal application. Unfortunately, we cannot construe the Act to stretch so far as to allow the fact of John Burns's involvement to provide a legal reason for refusing his wife's license. While the trial court did not so find, the facts presented by the Board did suggest that appellee had little involvement with her business and that John Burns for all practical purposes was operating under his wife's license. Any legislation aiming to regulate the business of bail bondsmen should aim to preclude the situation created by appellee and her husband. As the instant case illustrates, the Act would allow a situation in which members of one family could continue to obtain licenses when another immediate family member has already violated the Act in some way, which in this case would be John Burns's amassing outstanding judgments approaching half a million dollars and then ostensibly operating his wife's business as his own. The current state of the Act places no restrictions on past violators to continue working in the bail bond business. The magnitude of John Burns's violation of the Act, however, illustrates the inappropriateness of allowing his wife to maintain a license considering her absence from the business and her husband's significant involvement in the business. Although the statute provides no basis for revoking appellee's license on this basis, we address this issue only to note the gap in the statute allowing such a situation and would urge legislative review of this loosely worded statute.

However, we do find that when the trial court had evidence before it manifesting an outstanding judgment over thirty days old with no supersedeas bond filed, the trial court abused its discretion in ignoring such evidence and entering judgment reinstating the license. Therefore, we sustain points of error one, two, and three. Having found reason for reversal on these points, we need not address appellant's remaining points of error. The judgment of the trial court is reversed and judgment rendered that appellee's license application be refused.

## OPINION ON MOTION FOR REHEARING

■ On motion for rehearing, appellee takes us to task for our finding the trial court erred in renewing her bail bondsman license. We issue this opinion only insofar as to clarify our reading of the statute. Accordingly, we begin with appellee's assertion in her motion that our prior opinion misconstrued the Bail Bond Act (Act).

Appellee finds error in our decision because we found a basis for refusing to renew appellee's license in the section concerning only suspensions and revocations of such licenses. Appellee's assertion brings to light a significant weakness in the Act regarding the lack of guidance or meaning for the term "a legal reason" which the Act states may justify denying the renewal of a license. Section 8 states the conditions under which a license may be renewed as consisting of the following: submitting an application form that conforms to the requirements of the Act, accompanied by the fee of $500; no suspension or revocation of the current license; and *no legal reason why the application should not be renewed* (emphasis added). Tex.Rev.Civ. Stat.Ann. art. 2372p-3, § 8(a) (Vernon Supp. 1994). Nowhere in this section concerning the renewal of a license does there appear a list of reasons that could be considered "a legal reason" why the application should not be renewed. Appellee asserts without any support for her contention that section 3 comprises the legal reasons which may justify a Board's failure to renew a license. Section 3 sets out the eligibility for a license and does not state or even imply that its provisions are the legal reasons referred to later in the Act in section 8.

In construing this poorly conceived statute, we chose the better and more logical course of using the list of reasons set out in section 9 as the parameters for the "legal reason" referred to in section 8. We recognize the necessity of setting parameters within which the Bail Bond Board (Board) or a court may decide within their discretion whether to impair a party's right to a license. Having no other reference point or guiding principle other than logic and common sense, we

deemed it reasonable to use the list of reasons in section 9 as applicable not only to legal justifications for revoking or suspending a license but also as to legal justifications for refusing to *renew* a license. The enigmatic and vague language used to refer to renewing a license would otherwise permit any decisionmaking body to create its own conception of a legal reason to deny the license without any basis at all in the Act. Appellee's interpretation creates an overly strict dichotomy between the renewal process and the suspension and revocation process. In appellee's argument, a license could be renewed absent some legal reason for its denial even if one of the conditions of section 9(b) were present, but the Board could then immediately revoke or suspend the license based on the identical circumstance. We find this situation illogical and determine that the best means of reconciling the two sections requires finding section 9(b) supplies examples of legal reasons justifying a refusal to renew a license.

With this clarification, we overrule the motion for rehearing.

DRAUGH, J., dissents and would give Motion for Rehearing.