**HARRIS COUNTY BAIL BOND BOARD, Appellant,**

v.

**Edd BLACKWOOD and Allegheny Mutual Casualty Company, Appellees.**

No. 01–97–01178–CV.

Court of Appeals of Texas, Houston (1st Dist.).

June 10, 1999.

Opinion Overruling Motion for Rehearing Sept. 30, 1999.

Sandra D. Hachem, Assistant County Attorney, Houston, TX, for appellant.

Roger Moore, King, Hardesty & Moore, P.C., Austin, TX, for appellees.

Panel consists of Justices MIRABAL, O'CONNOR, and NUCHIA

## OPINION

MARGARET GARNER MIRABAL, Justice.

Appellant, the Harris County Bail Bond Board (the Board), appeals the trial court's judgment renewing the bail bond license of Allegheny Mutual Casualty Company (Allegheny). The Board brings five points of error, arguing that the trial court improperly ruled contrary to the Board's administrative decision to deny the license renewal. We affirm.

## I. *Standard of Review*

This case is controlled by the Bail Bond Act (the Act), which is a comprehensive statutory scheme governing the business of writing bail bonds. TEX.REV.CIV.STAT.

ANN. art. 2372p–3 (Vernon Supp.1999).[1] The Act provides for bail bond boards in various counties, including Harris County, to oversee the licensing and regulation of bail bondsmen. *Id.* at §§ 1, 3.

■ When a bail bond board denies a license, the Act provides for appeal by trial *de novo* to the district court. TEX.REV.CIV. STAT.ANN. art. 2372p–3, § 11 (Vernon Supp. 1999); *Harris County Bail Bond Bd. v. Burns*, 881 S.W.2d 61, 62 (Tex.App.— Houston [14th Dist.] 1994, writ denied) (providing general discussion of the Act). *De novo* authority vests a court with full power to determine the issues and rights of all parties and to try the case as if it had been filed originally in that court. *Lone Star Gas Co. v. State*, 137 Tex. 279, 153 S.W.2d 681, 692 (1941); *Burns*, 881 S.W.2d at 62.

■ The Board complains of both the trial court's conclusions of law and findings of fact. In reviewing a conclusion of law, we will uphold the conclusion if the judgment can be sustained on any legal theory supported by the evidence. *Nelkin v. Panzer*, 833 S.W.2d 267, 268 (Tex.App.— Houston [1st Dist.] 1992, writ dism'd w.o.j.). When reviewing a finding of fact, we will apply the same standards that are applied in reviewing the legal or factual sufficiency of the evidence supporting a jury's answer to a jury question. *Catalina v. Blasdel*, 881 S.W.2d 295, 297 (Tex.1994); *National Commerce Bank v. Stiehl*, 866 S.W.2d 706, 707 (Tex.App.—Houston [1st Dist.] 1993, no writ).

## II. *Case Background*

Allegheny is an insurance company headquartered in Pennsylvania. It is undisputed that Allegheny is a well-established and well-regarded national company that has been authorized by the Texas Department of Insurance to do business in Texas, including the business of writing bail bonds. Specifically, Allegheny has been authorized to write bail bonds in Harris County for 20 years, and it enjoys an excellent reputation. In 1997, when the bench trial occurred, Allegheny held licenses for approximately eight agencies in Harris County.[2] Until the license renewal at issue here—a 1995 renewal of a corporate license for which Appellee Edd C. Blackwood is the agent—the Board had never refused to issue or renew an Allegheny corporate license.

In 1989, Blackwood became an agent for Allegheny. Before affiliating with Allegheny, Blackwood had worked as an individual bondsman. It is undisputed that Blackwood, at the time of the administrative action and at the time of trial, owed Harris County money for bonds he wrote personally before his affiliation with Allegheny.[3]

As required by law, in 1989 Allegheny applied for and received a two-year license in Harris County with Blackwood as its agent. That license was renewed for two years in 1991, and again for two years in 1993. When Allegheny sought its August 1995 renewal, however, the Board apparently raised its first concerns with the license and renewed it for only three

---

1. The Bail Bond Act in effect in 1995, when the relevant nonrenewal occurred, was amended in 1997 by adding section 6A. *See* Act of June 19, 1997, 75th Leg., R.S., ch. 1039, § 45, 1997 Tex.Gen.Laws 3897, 3918. Accordingly, except for the new section 6A, which is not relevant to this appeal, the Bail Bond Act as it presently appears at TEX.REV. CIV.STAT.ANN. art. 2372p–3 (Vernon Supp. 1999) reflects the law in effect in 1995.

2. A corporate surety obtains a license for each of its agencies. TEX.REV.CIV.STAT.ANN. art.

2372p–3, § 7(c) (Vernon Supp.1999). Thus, Allegheny has other current licenses in Harris County. Its concern here is to obtain the license for Blackwood's agency.

3. At one time, Blackwood owed the County more than $500,000 in bond forfeitures pursuant to his personal license. When the Board denied the renewal in 1995, he owed approximately $290,000. By the time of trial, in 1997, he had reduced the debt to approximately $165,000.

months, rather than the standard two years.

When Allegheny sought renewal three months later, in November, the Board refused to renew the license further. Appellees immediately filed suit in district court, seeking *de novo* review and injunctive relief pending the outcome of the trial. During the pendency of the suit, Allegheny continued to write bail bonds in Harris County with Blackwood as agent, pursuant to a temporary restraining order and an agreed temporary injunction.

Following the bench trial, the trial court signed a final judgment stating that, because there was no legal reason for refusing to renew the bail bond license held by Allegheny with Blackwood as agent, the license was renewed for a period of 24 months beginning with the date of the judgment. The trial court signed findings of fact and conclusions of law that included the following:

### Findings of Fact

4. As of the date of the trial of this case, Edd Blackwood personally owed to the State of Texas approximately $165,000. This sum is the remaining portion that he owes on a final judgment of forfeiture entered against him personally for a bail bond obligation he incurred during a time when he held a property bondsman's license before he became an agent for Allegheny. This debt is a debt owed only by Edd Blackwood personally and is not a debt of Allegheny Mutual Casualty Company.

5. There is no showing that Allegheny Mutual Casualty Company has violated any of the provisions of Tex. Rev.Civ.Stat. Art. 2372p–3 9(b). Accordingly, the facts do not show that cause for suspension or revocation of Allegheny's Bail Bond License # 74267 exists.

6. Nor has it been shown that Edd Blackwood does not have a reputa-

tion of honesty, truthfulness, fair dealing and competency.

7. Renewing Allegheny's Bail Bond License # 74267 will not cause any harm to the State of Texas or to the public and is in the best interest of the public so that Edd Blackwood can continue to reduce his outstanding liability to the State of Texas.

### Additional or Amended Conclusions of Law

A. The Harris County Bail Bond Board, in carrying out its duty under Tex.Rev.Civ.Stat.Ann. Art. 2372p–3, was authorized to consider E[dd] Blackwood's good standing and character in determining whether license # 74167 [sic] of Allegheny Mutual Casualty Company should have been renewed in August and November of 1995.

. . .

B. Under the provisions of Tex.Rev. Civ.Stat. Art. 2372p–3, 8(a) and 6(b), Allegheny Mutual Casualty Company was entitled to renewal of its license, Harris County Bail Bond License # 74267, with Edd Blackwood as its agent for two years beginning 11/20/95 until 11/20/97.

### III. *Analysis*

■ In issue three, the Board argues that, as a matter of law, the trial court was prohibited from issuing a license to Allegheny with Blackwood as agent for two reasons: (1) the mere existence of Blackwood's personal forfeiture judgments prohibits it, and (2) the license renewal application presented to the trial court was incomplete. Making the same arguments under issue five, the Board asserts there was legally and factually insufficient evidence to support the trial court's finding of fact No. 5.

The Act sets forth the following considerations when determining whether to deny a license renewal:

If the applicant's current license has not been suspended or revoked, if the renewal application complies with the requirements of this Act, *and if the board knows no legal reason why the application should not be renewed,* the license may then be renewed for a period of 24 months from the date of expiration and may be renewed subsequently each 24 months in like manner.

TEX.REV.CIV.STAT.ANN. art. 2372p–3, § 8 (Vernon Supp.1999) (emphasis added). The Board argues that Blackwood's personal judgments are a "legal reason" justifying the denial of the license. However, under the facts presented here, we conclude that Blackwood's personal judgments do not constitute a "legal reason."

The Act does not expressly define a permissible "legal reason" for denying a renewal. Accordingly, we must ascertain the legislature's intent and give effect to that intent. *Union Bankers Ins. Co. v. Shelton,* 889 S.W.2d 278, 280 (Tex.1994). The Act's purpose is to guarantee the appearance of the accused. TEX.REV. CIV .STAT.ANN. art. 2372p–3, § 1 (Vernon Supp.1999). It establishes guidelines to insure a bondsman possesses sufficient financial resources to provide indemnity against loss. *Id.* at §§ 3(b), 6. Under the license at issue here, Harris County would seek recovery on a forfeited bond by looking to Allegheny's assets, and not those of Blackwood. *See Klevenhagen v. International Fidelity Ins. Co.,* 861 S.W.2d 13 (Tex.App.—Houston [1st Dist.] 1993, no writ) (discussing difference between corporate and individual sureties). It is undisputed that Allegheny has sufficient assets and a strong compliance record, and thus Harris County is protected. Accordingly, we reject the Board's first argument.

■ Second, the Board argues that the trial court is prohibited from renewing the license because the two 1995 applications introduced into evidence at trial by the appellees were "incomplete." Specifically, the Board complains that the applications in evidence were incomplete because, rather than including three letters of recommendation: (a) the May 1995 application included only one letter of recommendation for Blackwood, and (b) the November 1995 application included no letters of recommendation for Blackwood.

It is undisputed that a renewal application for a corporation requires three letters of recommendation for the person in charge of the business, here Blackwood. TEX.REV.CIV.STAT.ANN. art. 2372p–3, § 6(b) (Vernon Supp.1999). Each letter of recommendation must be from a "reputable person who [has] known [Blackwood] for a period of at least three years" and must contain a statement that "[Blackwood has] a reputation of honesty, truthfulness, fair dealing, and competency...."

The trial court admitted into evidence, without any objections by the Board, applications purported to be copies of those submitted for administrative review for August 1995 and November 1995, Exhibits 4 and 5 respectively. The reporter's record shows that the trial court and all parties understood the applications were copies of the applications submitted to the Board during the administrative process, and the trial proceeded as if the applications were complete.

Apparently following the trial, the Board determined that each application admitted into evidence did not contain three letters of recommendation. In post-trial motions, for the first time the Board complained that the applications admitted at trial did not include three recommendations for Blackwood.

The record unequivocally shows that during trial all parties focused primarily on the existence of Blackwood's personal debts and never focused on any deficiency in the contents of either application. Blackwood testified that the applications Allegheny filed with the Board during the administrative process were complete, in compliance with the Act. The cover sheet of each application contains a checklist of required documents that includes "5.

Three (3) letters of recommendation about the Executing Agent of this business." The cover sheet also states in capitalized, underlined words:

*ALL REQUIRED DOCUMENTS MUST BE TURN [sic] IN WITH THIS APPLICATION. NO INCOMPLETE APPLICATION WILL BE ACCEPTED*

The Board accepted the two applications. Blackwood testified that the Board never raised any questions about the completeness of the applications or their attachments. In its amended conclusions of law, the trial court specifically added that, under the provisions of articles "8(a) *and 6(b)*" Allegheny was entitled to renewal of its license. The evidence supports the trial court's conclusion.

We overrule issues three and five.

■ In issues one and two, the Board asserts the trial court erred in granting renewal of Allegheny's license for a 24–month period beginning on the date of judgment, August 20, 1997.

The Board argues that, assuming the renewal was proper, the trial court could at most renew the license for 24 months beginning the effective date of the *Board's decision*, rather than the date of the trial court's *judgment*. Thus, according to the Board, the trial court could only renew the license retroactively from November 20, 1995 to November 20, 1997, the 24–month renewal period denied by the Board; and not prospectively from August 20, 1997 to August 20, 1999, the 24–month period beginning on the date of judgment.

Neither the statute nor case law expressly addresses this issue. The relevant portion of the statute regarding court review provides as follows:

An appeal may be taken from any board's order revoking, suspending, or refusing to issue a license. The appeal must be made within 30 days after written notice of the suspension, revocation, or refusal by filing a petition in a district court in the county in which the license is issued or refused. If no appeal is taken within 30 days after written notice of suspension, revocation, or refusal, such action shall become final. An appeal shall be by *trial de novo*, as in proceedings appealed from justice to county courts. The decision of the board shall have full force and effect pending the determination of the appeal. All appeals taken from actions of the board shall be against the board and not against the members individually.

Tex.Rev.Civ.Stat.Ann. art. 2372p–3, § 11 (Vernon Supp.1999) (emphasis added).

The Board argues that Section 11 limits the trial court's relief to the time frame covered by the pending license, here November 20, 1995 to November 20, 1997. According to the Board, because there was no board order refusing to grant Allegheny a renewal specifically from the date of the judgment, August 20, 1997, the trial court had no authority to issue a license from that date. We disagree.

■ When interpreting a statute, we may consider the consequences of a particular construction, and we presume the legislature intended a fair and reasonable result. *Klevenhagen*, 861 S.W.2d at 16. Taken to its logical conclusion, the Board's proposed construction of the statute would allow unreasonable results by causing a trial court's review to provide no meaningful relief to a bondsman. For instance, when the trial is held after the expiration of the renewal period (as almost occurred here, except for three months), a retroactive license renewal would have no practical effect. By providing for a trial *de novo*, the Act effectively places the trial court in the shoes of the Board; the trial court is to review the applications and to make an independent determination of whether the license should be renewed. If the trial court approves renewal, the license is to be issued. The Act provides: "A license issued under this Act expires 24 months after the date of its issuance...."

TEX.REV.CIV.STAT.ANN. art. 2372p–3, § 8(a) (Vernon Supp.1999).

For the foregoing reasons, we overrule issues one and two.

■ Under issue four, the Board argues that the evidence was legally and factually insufficient to support finding of fact six, which provides as follows:

Nor has it been shown that Edd Blackwood does not have a reputation of honesty, truthfulness, fair dealing and competency.

■ In reviewing "no evidence" points, we consider only the evidence and inferences, when viewed in their most favorable light, that tend to support the finding. *Sherman v. First Nat'l Bank,* 760 S.W.2d 240, 242 (Tex.1988); *Neese v. Dietz,* 845 S.W.2d 311, 312 (Tex.App.—Houston [1st Dist.] 1992, writ denied). Here the evidence shows that Blackwood's debt arose several years ago, that he had substantially reduced the debt, that he intended to continue making monthly payments toward the debt, that no complaints had arisen regarding Blackwood's performance in the past eight years after he joined Allegheny in 1989, and that he was an effective bondsman. As found by the trial judge, three letters of recommendation were submitted in compliance with the Act, so reputable people had expressed their opinions that Blackwood had a "reputation of honesty, truthfulness, fair dealing, and competency." *See* TEX.REV.CIV.STAT.ANN. art. 2372p–3, § 6(b) (Vernon Supp.1999). Additionally, earlier applications for license renewal were admitted into evidence, and they included letters of recommendation from Harris County Criminal District judges attesting to Blackwood's "reputation for honesty, truthfulness, fair dealing, and competency." From the evidence, the trial court could have reasonably concluded that at the time of trial Blackwood had a reputation for honesty, truthfulness, fair dealing, and competency.

■ Next, in reviewing a factual sufficiency point, we first examine all of the evidence. *Pool v. Ford Motor Co.,* 715 S.W.2d 629, 635 (Tex.1986); *Cain v. Bain,* 709 S.W.2d 175, 176 (Tex.1986); *Hollander v. Capon,* 853 S.W.2d 723, 726 (Tex.App.—Houston [1st Dist.] 1993, writ denied). After considering and weighing all of the evidence, we set aside the finding only if the evidence is so weak or the finding is so against the great weight and preponderance of the evidence that it is clearly wrong and unjust. *Cain,* 709 S.W.2d at 176; *Hollander,* 853 S.W.2d at 726. We cannot substitute our opinion for that of the trier of fact and determine that we would reach a different conclusion. *Hollander,* 853 S.W.2d at 726. The Board asks us to consider Blackwood's prior debts as conclusive evidence that he lacks competency as an agent for Allegheny. However, having reviewed the evidence of debt along with the rest of the evidence, we cannot say the trial court's finding was so against the great weight and preponderance of the evidence as to be manifestly erroneous and unjust.

We overrule issue four.

All pending motions are denied as moot.

We affirm the judgment of the trial court.

## OPINION ON REHEARING

PER CURIAM.

We overrule appellant's Motion for Rehearing, noting that, as we stated in our opinion of June 10, 1999, the trial court's authority to renew the license for a 24–month period [1] derives from TEX.REV.CIV. STAT. ANN. art. 2372p–3 (Vernon Supp. 1999); thus appellant's argument that the

1. We further note that the 24–month renewal granted by the trial court expired August 20, 1999.

trial court lacked jurisdiction pursuant to TEX. CONST. art. V, § 8 is without merit.

It is so **ORDERED**.

Justice O'CONNOR dissenting.

MICHOL O'CONNOR, Justice, dissenting from denial of en banc consideration.

I dissent from the denial of the motion for rehearing and consideration en banc. This is an important issue of first impression—whether a trial court has original jurisdiction under the Bail Bond Act to grant a two year license renewal from the date of the district court's judgment when the de novo appeal does not involve a license denied for that time period.

In issues one and two, the Board contends the trial court erred in granting renewal of Allegheny's license for a 24-month period beginning on the date of the district court's judgment, which was August 20, 1997. The Board contends that, if renewal was proper, the trial court could only renew the license for the same period for which the Board had considered, that is for a 24-month period beginning on the date of the Board's decision, which was November 20, 1995. Thus, under the Board's analysis, the district court could only grant a 24-month renewal to November 20, 1997, as contrasted with the period it granted, to August 20, 1999.

The Board argues the district court had no authority to issue a renewal for a period other than the period considered by the Board. I agree with the Board. Thus, at the time the trial court rendered judgment, the only relief it could grant was to renew the licence for three months, the period remaining in Allegheny's application for renewal to the Board. That is the only power the district court had. The Board argues the Texas Constitution prohibited the district court from exercising original jurisdiction over matters conferred by law to the Board, an administrative body. Texas Constitution, article 5, section 8 states in part:

District Court jurisdiction consists of exclusive, appellate, and original jurisdiction of all actions, proceedings, and remedies, *except in cases where ... original jurisdiction may be conferred by ... other law on some ... administrative body.*

*See* Tex. Const. art. 5, sec. 8 (emphasis added).

Sections 5 and 8 of the Bail Bond Act grant the Board original jurisdiction to grant and renew licenses. They provide:

Sec. 5(f) In addition to the powers and duties given to the County Bail Bond Board by this Act, the board has the following powers and duties:

\* \* \*

(2) To conduct hearings and investigations and make determinations respecting the issuance, refusal, suspension, or revocation of licenses to bondsmen within the provisions of this Act and to issue licenses to those applicants who qualify under the terms of this Act, to refuse licenses to those applicants who do not qualify, and to suspend or revoke the licenses of licensees who commit violations under this Act or the rules prescribed by the board under this Act;

\* \* \*

Sec. 8. (a) A license issued under this Act expires 24 months after the date of its issuance and may not be renewed unless an application for renewal is filed with the board at least 30 days before expiration. The application for renewal shall have the same form and content as an application for an original license under this Act. The application for renewal shall be accompanied by a renewal fee of $500. If the applicant's current license has not been suspended or revoked, if the renewal application complies with the requirements of this Act, and if the board knows no legal reason why the application should not be renewed, the license may then be re-

newed for a period of 24 months from the date of expiration and may be renewed subsequently each 24 months in like manner.

Tex.Rev.Civ. Stat. art. 2372p–3, §§ 6, 8.

A license obtained under the Bail Bond Act is limited to two years. The Act specifically requires the applicant to file a renewal application that must be reviewed and approved by the Board. As made clear in section 8 of the Bail Bond Act, each license renewal is subject to the same requirements as the original license. *See* Tex.Rev.Civ. Stat. art. 2372p–3, § 8. Thus, I believe it was unconstitutional for the district court to extend the renewal beyond the time considered by the Board.

The panel opinion does not address the issue of the constitutional prohibition raised in the Board's brief, even though the Texas Rule of Appellate Procedure 47.1 requires the court to address all issues necessary to final disposition of the appeal. Rehearing and en banc consideration should be granted so that this impor-tant issue of first impression can be addressed in light of the constitutional issue briefed.

The Legislature obviously required licenses to be reviewed every two years because of the serious and important public interest involved. Nevertheless, without an application for the two year period at issue, the trial court granted Allegheny a two year renewal without an application that provides the secured sworn pledges of security for the renewal application period. This result could not have been the Legislature's intent under the Bail Bond Act by providing the right to de novo review.

For these reasons, this Court should grant rehearing en banc.