

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

### No. PD-0053-07

**MIKE McKENNA d/b/a BONDMAN BAIL BONDS, Appellant**

**v.**

**THE STATE OF TEXAS**

## ON THE STATE'S PETITION FOR DISCRETIONARY REVIEW
## IN CAUSE NO. 10-05-00318-CR FROM THE TENTH COURT OF APPEALS
## JOHNSON  COUNTY

> HOLCOMB, J., delivered the opinion of the Court, in which KELLER, P.J., and MEYERS, PRICE, JOHNSON, KEASLER, HERVEY, and COCHRAN, JJ., joined.  WOMACK, J., did not participate.

In this bail bond forfeiture case, the trial court denied the surety's request to remit a portion of the bond amount.  The court of appeals later reformed the trial court's order to reflect a remittitur of 60% of the bond amount.  We reverse.

On January 18, 2001, Belinda Lee Powell, charged in Johnson County with a felony drug offense, failed to appear in court for her trial.  On February 13, 2001, the trial court rendered judgment nisi for the State and against Powell and her surety, Mike McKenna d/b/a Bondman Bail

Bonds, jointly and severally, in the amount of Powell's bail bond, which was $25,000. On that same date, the trial court ordered that a capias be issued for Powell's arrest. On March 26, 2003, at the bond forfeiture hearing, the trial court rendered a default final judgment for the State and against Powell and McKenna.

On March 22, 2005, McKenna filed a special bill of review in the trial court requesting, on equitable grounds, that the default final judgment be reformed to reflect a 95% remittitur of the bond amount. On June 27, 2005, the trial court held an evidentiary hearing on McKenna's bill. At that hearing, McKenna called one witness, Charles A. Smith, and the State called no witnesses. Smith testified that: (1) he was, at the relevant times, an employee of McKenna's; (2) after Powell failed to appear in court for her trial, he and other McKenna employees "did [their] best to get [Powell] arrested"; (3) they "searched all the places [they] thought she might be," they "contacted her sisters [and] her mother," and they publicly offered a $1,000 reward for information leading to her arrest; (4) on September 13 or 14, 2001, an informant telephoned their office and told them of Powell's whereabouts; (5) on September 15, 2001, he personally went to the location given by the informant, which was off County Road 801 in Johnson County, and found Powell there; (6) he immediately telephoned the Johnson County Sheriff's Office and gave them Powell's location; and (7) he telephoned the Sheriff's Office again later that day and was "assured . . . that [Powell] had been arrested."

At the close of Smith's testimony, the trial court allowed McKenna and the State to present their arguments. McKenna argued that equity demanded "a substantial remittitur" because: (1) "Smith [had] expended substantial efforts in locating" and apprehending Powell and (2) "the State ha[d] not presented any evidence showing how [it had been] prejudiced" by the seven-month delay

in apprehending Powell. The State responded that equity did not require any remittitur at all because: (1) Smith's testimony had been "sketchy at best"; (2) Smith's efforts to locate and apprehend Powell had been "minimal"; and (3) the delay in apprehending Powell had been "significant."

On July 25, 2005, the trial court issued an order denying any remittitur to McKenna. The trial court gave no explanation for its ruling.

On direct appeal, McKenna argued that the trial court's denial of remittitur had been "an abuse of discretion considering all the facts of the case, especially in view of the fact . . . that the Surety [had been] totally responsible for locating [Powell] and having her apprehended." McKenna argued, too, that "the state [had] failed to present any evidence of harm done to the public or [any] prejudice suffered by the government" as a consequence of the delay in apprehending Powell. The State counterargued that the trial court had not abused its discretion in denying remittitur because McKenna had failed to carry his "burden [of showing] the [trial] court the equitable grounds [required] to grant the special bill of review."

The Tenth Court of Appeals, by a vote of two to one, agreed with McKenna's arguments and reformed the trial court's order to reflect a remittitur of 60% of the bond amount, i.e., $15,000. *McKenna v. State*, 209 S.W.3d 233, 236-237 (Tex.App.–Waco 2006). The chief justice of the court of appeals, in dissent, argued:

> "[T]he majority has placed the burden on the State to avoid a remittitur by presenting evidence. This is an erroneous placement of the burden of proof. The burden of proof is on the surety to establish that on equitable grounds a remittitur should be ordered.
>
> \* \* \*
>
> "The hearing [on the special bill of review] focussed on McKenna's efforts to locate Powell. Evidence on this single factor was not enough to convince the trial court of the surety's equitable interest in being granted a remittitur. I find no abuse

of discretion." *Id*. at 238-239.

The State later filed a petition for discretionary review, which we granted. *See* Tex. R. App. Proc. 66.3(e). In its petition and accompanying brief, the State, in essence, reiterates the arguments made by the chief justice in the court below. McKenna, in response, argues that the court of appeals "properly found . . . a clear and profound abuse of discretion based on the . . . record."

Article 22.17(a) of the Texas Code of Criminal Procedure provides:

> "Not later than two years after the date a final judgment is entered in a bond forfeiture proceeding, the surety on the bond may file with the court a special bill of review. A special bill of review may include a request, on equitable grounds, that the final judgment be reformed and that all or part of the bond amount be remitted to the surety, after deducting the costs of court, any reasonable costs to the county for the return of the principal, and the interest accrued on the bond amount from the date of forfeiture. The court in its discretion may grant or deny the bill in whole or in part."

Under the plain wording of the statute, a surety may request, within two years of a final judgment on a bond forfeiture, that the trial court order a remittitur of all or part of the bond amount on equitable grounds. Although the statute does not state that the surety has the burden of proof with respect to the existence of such equitable grounds, we are of the view that the surety does indeed have that burden, since the surety is the party attempting to change the status quo. This is so even though the State may have superior access to proof of certain matters. As one leading treatise explains, "The burdens of pleading and proof with regard to most facts have been and should be assigned to the [party] who generally seeks to change the present state of affairs and who therefore naturally should be expected to bear the risk of failure of proof or persuasion." K. Broun (ed.), *McCormick on Evidence* § 337 at 474 (6th ed. 2006). Our research also reveals that most or all other American jurisdictions also assign the burden of proof to the party seeking relief from a bond forfeiture. *See* 8A Am. Jur. 2d *Bail and Recognizance* § 150 (1997); 8 C.J.S. *Bail* § 313 (2005).

Under the terms of Article 22.17(a), the decision whether to grant any remittitur on equitable grounds rests within the sound discretion of the trial court. In making its decision, the trial court must keep in mind that, since the purpose of bail is to secure the accused's appearance in court, the law contemplates that the accused's nonappearance will normally result in total forfeiture of the bond amount. While keeping that fact in mind, the trial court may consider any factor bearing upon the equity of the situation, including, but not necessarily limited to, the following: (1) whether the accused's failure to appear in court was willful; (2) whether the delay caused by the accused's failure to appear in court prejudiced the State or harmed the public interest; (3) whether the surety participated in the re-arrest of the accused; (4) whether the State incurred costs or suffered inconvenience in the re-arrest of the accused; (5) whether the surety received compensation for the risk of executing the bail bond; and (6) whether the surety will suffer extreme hardship in the absence of a remittitur. *See Lyles v. State*, 850 S.W.2d 497, 502 (Tex.Crim.App. 1993); *Gramercy Ins. Co. v. State*, 834 S.W.2d 379, 381-382 (Tex.App.–San Antonio 1992, no pet.); 8A Am. Jur. 2d *Bail and Recognizance* §§ 150 & 151 (1997); 8 C.J.S. *Bail* § 290 (2005).

On this record, a reasonable trial court could have concluded that equity did not require any remittitur of the bond amount. Thus, we discern no abuse of discretion on the part of the trial court. McKenna had the burden of showing that equity required a remittitur of some or all of the bond amount, yet he presented evidence on only one of the relevant factors: his participation in the re-arrest of Powell. McKenna, who undoubtedly received monetary compensation for his risk in executing Powell's bail bond, presented no evidence concerning the reason for her nonappearance in court, or the prejudice, costs, and inconvenience suffered (or not suffered) by the State and the public as a result of her nonappearance and the seven-month delay until she was re-arrested.

The record shows no abuse of discretion on the part of the trial court, and the court of appeals erred in holding otherwise. We reverse the judgment of the court of appeals and affirm the order of the trial court.

DELIVERED MARCH 12, 2008

PUBLISH