### GRIMES COUNTY BAIL BOND BOARD, Appellant,

v.

### Sonny ELLEN d/b/a Sonny Ellen Bail Bonds, Appellee.

Nos. 14–06–00906–CV, 14–06–00907–CV.

Court of Appeals of Texas, Houston (14th Dist.).

July 22, 2008.

Rehearing Overruled Aug. 28, 2008.

---

Jon Christopher Fultz, Anderson, TX, for appellants.

Lane D. Thibodeaux, Bryan, TX, for appellees.

Panel consists of Chief Justices HEDGES, and Justices BROWN and BOYCE.

## OPINION

WILLIAM J. BOYCE, Justice.

The Grimes County Bail Bond Board suspended and later revoked Sonny Ellen's bail bond surety license after he failed to disclose unpaid judgments for bail bond forfeitures in his license application. In a *de novo* appeal, the trial court found that Ellen had failed to pay judgments but nonetheless reinstated his license. Because Ellen had unpaid judgments at the time of trial, the trial court abused its discretion in reinstating his license. We therefore reverse the trial court's judgment and remand for further proceedings consistent with this opinion.

## BACKGROUND

■ The Board issued a bail bond surety license to Sonny Ellen in April 2005. Two months later, the Board suspended Ellen's license for failing to pay or supersede 26 judgments and instructed him to pay all outstanding judgments to avoid license revocation. In 23 of those cases, Ellen filed special bills of review in which he sought to reduce the amounts owed.[1] On July 8, 2005, those special bills were denied. Ellen subsequently paid most—but not all—of the outstanding judgments.

■ The Board revoked Ellen's license on July 15, 2005 for failing to pay judgments pursuant to Occupations Code sec-

---

1. Filing a special bill of review does not obviate the bondsman's obligation to pay or supersede a forfeiture judgment. *See* Tex. Occ. Code Ann. § 1704.204(a) (Vernon 2004); *In re Casteneda*, No. 04–04–00152–CV, 2004 WL 572355, at *1 (Tex.App.–San Antonio March 24, 2004, orig. proceeding [mand. denied] ) (mem. op.).

tions 1704.204 and 1704.252.[2] Ellen appealed the Board's decision to the district court, which conducted a trial *de novo* on appeal. The court found that Ellen failed to pay judgments in accordance with Occupations Code section 1704.204, which is a stated reason for suspending or revoking a bail bond surety license. *See* Tex. Occ. Code Ann. § 1704.252(8) (Vernon 2004). The court interpreted section 1704.252 to provide discretion to reinstate, which it employed to reinstate Ellen's license. The Board appealed.[3]

## STANDARD OF REVIEW

A bail bond licensee may appeal a board order suspending or revoking a license by filing a petition in the trial court. Tex. Occ.Code Ann. § 1704.255(a) (Vernon 2004). The trial court is to review the appeal "by trial de novo in the same manner as an appeal from a justice court to a county court." Tex. Occ.Code Ann. § 1704.256 (Vernon 2004). Therefore, in the district court both sides present evidence to the trial judge for a determination on the evidence introduced. *See Harris County Bail Bond Bd. v. Burns*, 881 S.W.2d 61, 62 (Tex.App.–Houston [14th Dist.] 1994, writ denied). The board's decision to revoke a license enjoys no deference during the *de novo* appeal. *See id.*

Instead, the trial court is vested with full power to determine the issues and rights of all parties, and to try the case as though it had been filed originally in that court. *See Harris County Bail Bond Bd. v. Blackwood*, 2 S.W.3d 31, 33 (Tex.App.–Houston [1st Dist.] 1999), *rev'd on other grounds*, 41 S.W.3d 123 (Tex.2001).[4]

We review the trial court's factual findings under the same standards that would be used in reviewing the legal or factual sufficiency of the evidence supporting a jury's answer to a jury question. *Blackwood*, 2 S.W.3d at 33 (citing *Catalina v. Blasdel*, 881 S.W.2d 295, 297 (Tex.1994)). In reviewing the trial court's conclusions of law, we will uphold on any legal theory supported by the evidence. *Burns*, 881 S.W.2d at 62.

## ANALYSIS

The governing statute provides that "[a]fter notice and hearing, a board may revoke or suspend a license if the license holder ... fails to pay a judgment in accordance with Section 1704.204." Tex. Occ.Code Ann. § 1704.252(8). Section 1704.204 requires a bondsman to pay a final judgment on a bail bond forfeiture not later than the 31st day after the date of the final judgment unless such judg-

**2.** The Board also concluded that Ellen made a false statement on his license application. The trial court noted on the record that Ellen had answered a license application question incorrectly, but those comments were not reduced to a formal finding of fact; therefore, we will not consider them. *See Stevens v. Snyder*, 874 S.W.2d 241, 243 (Tex.App.–Dallas 1994, writ denied). The record does not demonstrate that the Board requested an additional finding of fact on this ground, and the trial court's lack of such finding therefore is not preserved for review. *See Robles v. Robles*, 965 S.W.2d 605, 611 (Tex.App.–Houston [1st Dist.] 1998, pet. denied).

**3.** Ellen separately appealed the Board's rulings suspending and later revoking his license. The trial court consolidated those two *de novo* proceedings, and we resolve both together.

**4.** Although the Texas Supreme Court reversed *Blackwood*, it nonetheless upheld the principle that a board's decision is entitled to no deference. *See Harris County Bail Bond Bd. v. Blackwood*, 41 S.W.3d 123, 127 (Tex.2001) ("[I]n a de novo proceeding it was necessary that the [evidence] required by the statute be before the trial court, which was required to pass on [the license] application *without regard to the Board's decision.*") (emphasis added).

ment has been appealed, in which case the bondsman must deposit with the court either cash or a supersedeas bond in the amount of the judgment. *See id.* § 1704.204(a).

In 1994, we examined the predecessor statute to section 1704.252 and concluded that a trial court may not renew the license of a bondsman who has failed to pay or supersede judgments arising from bond forfeitures. *Burns,* 881 S.W.2d at 64. The only choices in that circumstance are revocation or suspension. *See generally id.* at 64–65 (applying the grounds for revocation or suspension to license renewal). We rejected a suggested interpretation that would have allowed a board or trial court to permit persons to work as bondsmen even though they were statutorily disqualified from doing so. *See id.* at 63. We concluded that such a statutory interpretation would defeat the legislative purpose of protecting the public's interest in securing the appearance of the accused. *See id.; In re Canales,* 52 S.W.3d 698, 702 (Tex.2001) (orig. proceeding) (court may consider the statute's objectives and the consequences of a particular construction).

■ Almost a decade later, we concluded that *Burns* survived the Legislature's 1999 recodification of the bail bond act. *See Ellen v. Brazos County Bail Bond Bd.,* 127 S.W.3d 42, 47–48 (Tex.App.–Houston [14th Dist.] 2003, no pet.). We presume that the Legislature knew of our interpretation in *Burns* when it recodified the statute. *See Coastal Indus. Water Auth. v. Trinity Portland Cement Div.,* 563 S.W.2d 916, 918 (Tex.1978). The recodified statute carried forward the same language we interpreted in *Burns,* thereby indicating a legislative adoption of our prior construction. *See id.*

Although *Burns* involved license renewal rather than suspension or revocation, the legal justifications for refusing to renew a license apply with equal force to suspension or revocation. *See id.* at 64–65. Ellen candidly acknowledges that, under *Burns*'s interpretation of the bail bond act, the trial court could not reinstate his license; its only choices were to suspend or revoke his license based upon the presence of unpaid, unsuperseded judgments. He urges us to overrule *Burns,* contending that the decision violates the Code Construction Act's definition of the term "may;" defeats the purpose of *de novo* appeal; and renders an accompanying statutory provision meaningless.

■ We decline the invitation to overrule *Burns,* and we re-affirm that the bail bond act gives a trial court discretion to choose between suspending or revoking the license of a bondsman who has unpaid judgments at the time of the *de novo* hearing. The trial court does not have discretion to reinstate a license because the statute does not provide this option under these circumstances. We reach this conclusion based not only on the continuing vitality of *Burns,* but also because of the statute's unambiguous language.

### A. Stare Decisis

■ Given *Burns,* a discussion of *stare decisis* is warranted at the outset. Our prior opinions have continuing authority, even when a party contends that a precedent was incorrectly decided. *See Guest v. Cochran,* 993 S.W.2d 397, 404 n. 6 (Tex.App.–Houston [14th Dist.] 1999, no pet.). We generally adhere to our precedents pursuant to *stare decisis* because consistency promotes efficiency, fairness, and legitimacy. *See Weiner v. Wasson,* 900 S.W.2d 316, 320 (Tex.1995). If we did not follow our own decisions we would not be giving due consideration to the settled expectations of litigants because no issue could ever be considered truly resolved. *See id.* In addition, the legitimacy of the

judiciary rests in significant part "upon a stable and predictable decisionmaking process." *Id.*

■ *Stare decisis* is strongest in cases involving statutory construction because the Legislature may correct perceived construction errors through statutory amendment. *See Fiess v. State Farm Lloyds,* 202 S.W.3d 744, 749–50 (Tex.2006). As noted above, the Legislature met after *Burns* was issued and recodified the bail bond act without substantive change. *See* Tex. Occ.Code Ann. § 1.001 (Vernon 2004). We therefore presume that the Legislature intended the same construction to continue to apply. *See Fiess,* 202 S.W.3d at 749–50. This presumption underscores that *Burns* was correctly decided.

In light of Ellen's challenge to the correctness and wisdom of *Burns,* however, we do not rely solely upon *stare decisis* in concluding that the trial court lacked discretion to reinstate Ellen's license in the face of unpaid judgments. We reach this decision because we adhere to our precedent, and because this result is dictated by legislative intent reflected in the operative statutory language.

### B. Statutory Construction

In construing a statute, our primary goal is to determine and effectuate legislative intent. *Canales,* 52 S.W.3d at 702. If a statute is clear and unambiguous, we need not resort to rules of construction. *Id.* We may consider, among other things, the statute's objectives and the consequences of a particular construction. *Id.* We read the statute as a whole and interpret it to effectuate every part. *See City of Houston v. Jackson,* 42 S.W.3d 316, 319–20 (Tex.App.–Houston [14th Dist.] 2001, pet. dism'd w.o.j.).

Ellen focuses on the word "may" in the phrase "may revoke or suspend" appearing in section 1704.252. Ellen argues that "may" is permissive rather than mandatory so as to give a trial court discretion to reinstate if it so chooses. Ellen stresses that the term "may" signifies "discretionary authority or grants permission or a power." *See* Tex. Gov't Code Ann. § 311.016(1) (Vernon 2005). This is true as far as it goes-but it does not go as far as Ellen contends.

The word "may" must be analyzed, but it must not be analyzed in isolation; statutory context must be considered. *See, e.g., Aaron Rents, Inc. v. Travis Cent. Appraisal Dist.,* 212 S.W.3d 665, 671 (Tex.App.– Austin 2006, no pet.) ("[W]hether a statute requires the imposition of attorney's fees or vests the trial court with the discretion to decide does not depend exclusively on whether the statute uses the word 'may' or 'shall.'"); *BWI Cos. v. Beck,* 910 S.W.2d 620, 623 (Tex.App.–Austin 1995, orig. proceeding [mand. overruled]). Additionally, the Code Construction Act does not elevate any particular rule over another. *See* Tex. Gov't Code Ann. § 311.003 (Vernon 2005). We note that several other provisions of the Code Construction Act support our conclusion in this case, including:

- The entire statute is presumed to be effective. *Id.* § 311.021(2).
- A just and reasonable result is intended. *Id.* § 311.021(3).
- Public interests are favored over private interests. *Id.* § 311.021(5).
- The Court may consider the objects to be attained and the consequences of a particular construction. *Id.* § 311.023.

We agree that the word "may" vests the trial court with discretion, but that discretion does not encompass reinstatement.

Section 1704.252's key language provides that "a board *may revoke or suspend* a license if the license holder . . . fails to pay

a judgment[.]" Tex. Occ.Code Ann. § 1704.252(8) (emphasis added). This language is unambiguous. It gives the trial court discretion to choose between revocation and suspension. It does not give the trial court discretion to choose a reinstatement option that is nowhere mentioned in section 1704.252. The word "may" cannot be divorced from its surrounding language to change the statute's meaning, or to add an option the statute does not provide under these circumstances. *See Jones v. Liberty Mut. Ins. Co.*, 745 S.W.2d 901, 902 (Tex.1988); *see also Morales v. Liberty Mut. Ins. Co.*, 241 S.W.3d 514, 517–18 (Tex.2007) (requiring that statutes be read in context).

■ Section 1704.252's unambiguous language effectuates the statute's purpose. The bail bond act was intended to ensure the financial security and integrity of bondsmen, "whose business the Act deems to be in the public interest aimed at securing the appearance of the accused." *Burns,* 881 S.W.2d at 63; *Blackwood,* 41 S.W.3d at 128. Consistent with that purpose, the Act—when read as a whole—evinces a consistent legislative intent to prevent bondsmen with unpaid judgments from continuing to issue bail bonds. *See, e.g.,* Code Crim. Proc. Ann. art. 17.11, § 2 (Vernon 2005) (disqualifying defaulting sureties from signing as sureties on additional bonds). Accordingly, license applicants must disclose any unpaid judgments; until such judgments are paid, applicants are expressly barred from licensure. *See* Tex. Occ.Code Ann. § 1704.154(b), (d). Had Ellen disclosed the unpaid judgments, the Board would have been required to deny his application. *See Blackwood,* 41 S.W.3d at 126 ("The Act therefore makes all application requirements mandatory."). We will not embrace an interpretation of section 1704.252 that ignores unpaid judgments foreclosing Ellen's licensure.

■ Enforcement of the bail bond act's unambiguous provisions is important for the proper functioning of the bail mechanism. Bail is the security a criminal defendant gives to evidence his promise that he will appear and answer the accusations brought against him. Tex.Code Crim. Proc. Ann. art. 17.01 (Vernon 2005). The primary purpose of a bail bond is to secure the presence of the defendant in court for trial on the offense with which he has been charged. *McKenna v. State,* 247 S.W.3d 716, 719 (Tex.Crim.App.2008).

■ Bail bonds are contracts between the surety and the State of Texas. *Reyes v. State,* 31 S.W.3d 343, 345 (Tex. App.–Corpus Christi 2000, no pet.). The contract consists of the surety's promise that the defendant will appear before the court. *See id.* at 346. Forfeiture judgments recognize that the State may incur costs or suffer inconvenience in re-arresting an accused who fails to appear. *See McKenna,* 247 S.W.3d at 719. While bail bonds are neither punitive nor a substitute for fines or revenue devices, they protect the public's interest by ensuring the defendant's appearance and encouraging the surety's participation in re-arrest when the defendant does not appear. *See Gramercy Ins. Co. v. State,* 834 S.W.2d 379, 381–82 (Tex.App.–San Antonio 1992, no writ).

■ Consistent with this purpose, a proper bail bond must contain the surety's binder that the defendant will appear to answer the charges. Tex.Code Crim. Proc. Ann. art. 17.08, § 2. An officer who accepts a bail bond must verify the sufficiency of the security offered. *Id.* art 17.11, § 1; art. 17.13. Those who would act as sureties must pass several eligibility requirements, including possession of sufficient financial resources; experience in the bail bond business; and education from an ac-

credited institution of higher learning. *See* Tex. Occ.Code Ann. § 1704.152.

After becoming licensed, a bondsman is prohibited from writing bail bonds totaling more than ten times the value of the deposited security. *Id.* § 1704.203(a). Further, a bondsman may not execute additional bail bonds if the amount of liability on pending judgments nisi equals or exceeds twice the amount of the deposited security. *Id.* § 1704.203(c). A bondsman must promptly pay all forfeiture judgments not later than the 31st day after the date of the judgment, unless superseded on appeal. *Id.* § 1704.204(a). A licensing board that learns of unpaid final judgments must immediately notify the sheriff, who is prohibited from accepting any bonds from that surety until the judgments have been paid. *See id.* § 1704.2535. These enforcement provisions protect against a bondsman's insolvency. *Font v. Carr,* 867 S.W.2d 873, 880 (Tex. App.–Houston [1st Dist.] 1993, writ dism'd w.o.j.).

In light of this detailed structure, the existence of multiple unpaid judgments is no mere technicality. A bondsman's accumulation of unpaid judgments undermines the entire bail process. The Legislature consistently has spoken to prevent defaulting sureties from continuing to act as bail bondsmen. Interpreting section 1704.252 to permit reinstatement in the face of unpaid judgments would eviscerate legislative intent to prevent bondsmen in default from continuing to issue bail bonds. *See Burns,* 881 S.W.2d at 63.

### C. Trial De Novo

■ Ellen contends that continued adherence to *Burns* is incompatible with judicial review of a board's decision by trial *de novo* in the district court. *See* Tex. Occ.Code Ann. §§ 1704.255(a), 1704.256. The basis for this contention is not clear. The district court's power to

conduct a trial "de novo," that is, a "trial anew," vests the court with full power to determine the issues and parties' rights, and to try the case as though suit had been filed originally in that court. *See Lone Star Gas Co. v. State,* 137 Tex. 279, 153 S.W.2d 681, 692 (1941); *Blackwood,* 2 S.W.3d at 33. The trial court, as the trier of fact, weighs the evidence and assesses credibility. *See Jones v. Tarrant Util. Co.,* 638 S.W.2d 862, 866 (Tex.1982). The Board's factual findings, and ultimate determination to revoke, therefore enjoy no deferential treatment. *See Burns,* 881 S.W.2d at 62.

■ But the power to try a case *de novo* does not confer unbridled discretion to pick an outcome the statute does not specify for a bondsman with unpaid judgments. Section 1704.252 limits the trial court's options if it finds one of the enumerated statutory violations. *See id.* (providing that a license may be revoked or suspended if the bondsman is found to have committed one of the listed violations). The terms "revoke" and "suspend" are not interchangeable. A suspended license is subject to reinstatement if the violation that led to suspension can be cured. *See, e.g.,* Tex. Occ.Code Ann. § 1704.253(a) (providing for reinstatement of a suspended license after the deposit of additional security). By contrast, a bondsman whose license has been revoked must reapply for a new license. *See, e.g., Austin v. Harris County Bail Bond Bd.,* 756 S.W.2d 65, 66 (Tex.App.–Houston [1st Dist.] 1988, writ denied).

■ Allowing a trial court to rehear the evidence and reach its own determination while confining its options within the boundaries of section 1704.252 harmonizes statutory language with legislative intent to prevent sureties from issuing bail bonds while in default of forfeiture judg-

ments. The trial court need not make the same ruling as the licensing board. For example, although a board may revoke a license for unpaid judgments, the trial court may opt to consider mitigating factors and decide upon suspension pending payment of the outstanding judgments. Moreover, if the license holder can cure a section 1704.252 violation at the time of the *de novo* hearing by paying outstanding judgments, the license *then* may be reinstated because section 1704.252 no longer would require suspension or revocation. In short, our interpretation does not conflict with the concept of *de novo* review.

### D. Role of Section 1704.253

Ellen argues that our interpretation of section 1704.252 is erroneous because it renders meaningless an accompanying provision, section 1704.253. We disagree.

Section 1704.252 provides for "Discretionary License Suspension or Revocation," while section 1704.253 provides for "Mandatory License Suspension or Revocation." [5] Ellen contends that interpreting section 1704.252 to require suspension or revocation—and to exclude reinstatement—makes section 1704.253 meaningless because this latter provision also requires suspension or revocation. This argument fails to recognize that sections 1704.252 and 1704.253 address different circumstances.

Under section 1704.252(8), the board "may revoke or suspend a license" if the license holder fails to pay or supersede a judgment. Under section 1704.253(a), the board "shall immediately suspend a license" if the license holder fails to maintain the aggregate security required under section 1704.160. Under section 1704.253(b), the board "shall revoke a li-

cense" if the license holder fails to maintain the aggregate security required under 1704.160, and also fails to pay or supersede a judgment.

Section 1704.252(8) vests the trial court with discretion to suspend or revoke a license if the bondsman fails to pay or supersede a judgment. *See* Tex. Occ.Code Ann. § 1704.252(8). In contrast, section 1704.253(a) gives the trial court no discretion if the bondsman fails to maintain the aggregate security required under section 1704.160; suspension is the only option. Similarly, section 1704.253(b) gives a trial court no discretion if the bondsman fails to pay or supersede a judgment, and also fails to maintain the aggregate security required under section 1704.160. In that latter circumstance—which couples an unpaid and unsuperseded judgment with insufficient aggregate security—revocation is the only option. *See id.* § 1704.253(b). Because sections 1704.252 and 1704.253 address different circumstances, our interpretation of section 1704.252 does not render section 1704.253 meaningless. *See Helena Chem. Co. v. Wilkins,* 47 S.W.3d 486, 493 (Tex.2001).

## CONCLUSION

Section 1704.252 vests the trial court with the discretion to revoke or suspend a bondsman's license when there are unpaid judgments. Because the trial court found that Ellen had unpaid judgments but nevertheless reinstated his license, we must reverse. The Board asks that we render judgment in its favor. However, we believe that remand is appropriate. We remand these proceedings to the trial court for a determination as to whether Sonny Ellen still has unpaid judgments against him. If so, the trial court can decide

---

5. The title of a section does not limit or expand the statute's meaning. *See* Tex. Gov't Code Ann. § 311.024. Accordingly, we will not consider the title when interpreting the statute.

whether to revoke Ellen's license or suspend it until all outstanding judgments have been paid.

Accordingly, we reverse the July 18, 2006 judgments in cause numbers 30,088 and 30,140, and remand to the trial court for further proceedings consistent with this Opinion.