Rolando and Andrea **REYES**,
Appellants,

v.

The **STATE** of Texas, Appellee.

No. 13–99–280–CV.

Court of Appeals of Texas,
Corpus Christi.

Sept. 21, 2000.

Rehearing Overruled Nov. 16, 2000.

Michael K. Burns, Corpus Christi, for Appellants.

Terry Joseph Breen, Asst. Dist. Atty., Refugio, Michael A. Sheppard, Dist. Atty., Cuero, Robert C. Lassmann, Asst. Dist. Atty., Cuero, for State.

Before Justices HINOJOSA, CHAVEZ, and RODRIGUEZ.

## OPINION

Opinion by Justice NELDA V. RODRIGUEZ.

█ Rolando Reyes and Andrea Reyes appeal a judgment nisi[1] and subsequent judgment declaring forfeiture of a $25,000.00 bail bond for which they were a surety. We affirm.

Appellants posted an appeal bond for Santos Cuellar in the amount of $25,000.00 with the Sheriff of Refugio County, Texas on January 13, 1998.[2] Cuellar was not released from custody; instead, he was picked up by federal authorities on January 23, 1998 and was subsequently deported to Mexico. There is no evidence in the record showing why Cuellar was deported.[3] On December 8, 1998, the trial court held a hearing pursuant to this Court's order that the trial court appoint new counsel to represent Cuellar on appeal. Although notice was sent to appellants, no notice was sent to Cuellar to be present at the hearing.[4] After Cuellar did not appear

---

1. The literal meaning of "judgment nisi" is "judgment unless." *Bob Smith Bail Bonds, Sur. v. State*, 963 S.W.2d 555, 556 (Tex.App.— Fort Worth 1998, no pet.). It denotes a judgment that will stand unless the "party affected by it shall appear and show cause against it...." *See* BLACK'S LAW DICTIONARY 944 (5th ed.1979).

2. There was some dispute at the hearing on the judgment nisi as to when the appeal bond was filed. The appeal bond itself is stamped filed January 23, 1998, but indicates it was filed and signed by the judge on January 13, 1998. The judgment nisi recites that appellants entered into the bond on January 13, 1998. In their briefs, both parties agree the bond was posted on January 13, 1998. Accordingly, we treat the appeal bond as en-

tered on January 13, 1998. *See* TEX.R.APP. P. 38.1(f).

3. Rolando Reyes testified Cuellar was not an illegal alien and that he had a green card.

4. Under article 22.05 of the code of criminal procedure, the principal is not entitled to notice "unless he has furnished his address on the bond, in which event notice to the defendant [principal] shall be deposited in the United States mail directed to the defendant at the address shown on the bond." TEX.CODE CRIM. PROC ANN. art. 22.05 (Vernon 1989); *see Rodriguez v. State*, 990 S.W.2d 438, 441 (Tex. App.—El Paso 1999, no pet.) (noting "[f]ormal service of citation on the principal is clearly not contemplated by article 22.05").

at the hearing, the trial court entered a judgment nisi, declaring forfeiture of the bond. On April 7, 1999, after a hearing, the court entered a final judgment declaring the bond forfeited. This appeal ensued.

■ By their first issue, appellants contend the trial court erred in failing to exonerate them from liability because the bond in question was not a valid and binding undertaking in law.

Article 22.13 of the code of criminal procedure provides that a surety will be exonerated from liability if "the bond is, for any cause, not a valid and binding undertaking in law." TEX.CODE CRIM. PROC. ANN. art. 22.13(3) (Vernon 1989). Furthermore, article 17.29 provides, "[w]hen the accused has given the required bond, either to the magistrate or the officer having him in custody, he shall at once be set at liberty." TEX.CODE CRIM. PROC. ANN. art. 17.29(a) (Vernon Supp.2000).

Appellants assert Cuellar was never released from custody and set at liberty; thus, the bond was not a valid undertaking in law. The evidence shows a bond was posted for Cuellar on January 13, 1998, and he was not released to the federal authorities until January 23, 1998. There was testimony that the Immigration and Naturalization Service ("I.N.S.") placed a detainer[5] on Cuellar and sent it to the Refugio County Sheriff, and that Cuellar was held in custody in the interim for the I.N.S. There was also testimony that Rolando Reyes was aware of the I.N.S. detainer prior to Cuellar being handed over to the I.N.S. on January 23.[6]

■ Article 17.08 of the code of criminal procedure outlines the requirements for a bail bond. TEX.CODE CRIM. PROC. ANN. art. 17.08 (Vernon Supp.2000). Significantly, it does not require release of the principal. Release of the principal is discussed in article 17.29, which directs that the principal is to be set at liberty when the accused has given the required bond. TEX.CODE CRIM. PROC. ANN. art. 17.29(a) (Vernon Supp.2000). From a reading of articles 17.08 and 17.29, it appears that validity of the bond does not depend upon release of the principal; rather, validity of the bond must be established in order to secure release of the principal.

■ Bail bonds are contracts between the surety and the State. *Morin v. State*, 770 S.W.2d 599, 599 (Tex.App.—Houston [14th Dist.] 1989), *pet. dism'd per curiam*, 800 S.W.2d 552 (Tex.Crim.App.1990); *Keith v. State*, 760 S.W.2d 746, 747 (Tex. App.—Fort Worth 1988), *aff'd*, 802 S.W.2d 690 (Tex.Crim.App.1990). "A 'bail bond' is a *written undertaking* entered into by the defendant and his sureties for the appearance of the principal therein before some court or magistrate to answer a criminal accusation...." TEX.CODE CRIM. PROC.

---

5. A document entitled, "Immigration Detainer–Notice of Action" appears in the reporter's record. It is addressed to the Refugio County's Sheriff and advises that an investigation has been initiated to determine whether Cuellar is subject to removal from the United States. It requests that the Sheriff's office notify the I.N.S. of Cuellar's time of release at least thirty days prior to the release. The document is dated November 16, 1997.

6. There was conflicting testimony as to whether Reyes was aware that the I.N.S. had a detainer out for Cuellar when he posted bond or before Cuellar was released to the federal authorities. According to Rolando Reyes, Cuellar never informed him of any problems with the I.N.S, and if he had, Reyes probably would have never bailed him out.

Reyes testified, "after a few days, two or three days, this is when we find out about it with I.N.S. The man stayed there ten days or longer before they picked him up. But I wasn't aware until about two or three days later. If I was aware before that I would have never released him, I would have never bailed him out." However, Reyes also stated that he called the jailhouse one time to inquire why Cuellar was still being held. He was informed that Cuellar was being held for the I.N.S. Robert L. Vega, an assistant jail administrator for Refugio County Sheriff's Department, testified he advised Mr. and Mrs. Reyes that Cuellar had an I.N.S. detainer prior to their making bond, and that he explained that Cuellar would not be released by the bond.

ANN. art. 17.02 (Vernon 1977) (emphasis added). The contract consists of a promise by the surety that the principal will appear before the court in exchange for a promise by the State that it will release the principal. Appearance of the principal before the court and release of the principal by the State relate to performance of the bond, rather than to its validity. The legislature has provided sureties with a remedy for instances in which the principal cannot be released because he is being held in the custody of another jurisdiction. Article 17.16 provides that "A surety may before forfeiture relieve himself of his undertaking by . . . delivering to the sheriff of the county where the prosecution is pending an affidavit stating that the accused is incarcerated in federal custody, in the custody of any state, or in any county of this state." TEX.CODE CRIM. PROC. ANN. art. 17.16(a)(2) (Vernon Supp.2000). Appellants, in this case, elected not to pursue relief under article 17.16. Nonetheless, the bond complied with article 17.08 and was a valid and binding undertaking at law. Appellants' first issue is overruled.

■ In their second issue, appellants claim the trial court erred in failing to exonerate them from liability because Cuellar's failure to appear was an uncontrollable circumstance that arose from no fault on his part. Article 22.13 provides exoneration for a surety if some "uncontrollable circumstance" that arose through no fault of the principal prevented his appearance at court. TEX.CODE CRIM. PROC. ANN. art. 23.13(3) (Vernon 1989).

■ The court of criminal appeals has held that a principal's incarceration in another state or country is an uncontrollable situation for purposes of article 23.13(3). *Hill v. State*, 955 S.W.2d 96, 99–100 (Tex. Crim.App.1997). As the court explained, "[a] principal incarcerated in another jurisdiction could not appear for trial pursuant to the bond if he wanted to." *Id.* at 99. Similarly, we conclude a principal's deportation from the United States is an uncontrollable situation, as he may not legally reenter the country to appear before a court.

Appellants must still, however, show the circumstances arose through no fault of the principal. TEX.CODE CRIM. PROC. ANN. art. 23.13(3) (Vernon 1989). The *Hill* court examined the "fault" requirement in the context of the principal being incarcerated in another jurisdiction. *See Hill*, 955 S.W.2d at 99–101. The court commented:

> In assessing "fault" the principal's status in the other jurisdiction becomes important-is the principal simply awaiting trial there, or has the principal been convicted and is now serving his sentence? If a principal has been convicted of the crime in the other jurisdiction, the reasoning of *Williams[v. State*, 130 Tex.Crim. 124, 92 S.W.2d 1036 (1936)], *supra*, makes sensesince the principal's illegal actions led to his incarceration and it is the incarceration that prevents his appearance, it cannot be said that his failure to appear "arose through *no fault* on his part." He certainly bears some modicum of fault in his failure to appear by virtue of the fact that his illegal actions led directly to his incarceration, thereby preventing his appearance.

*Id.* (emphasis in original). The court further explained, in the context of a summary judgment, that "[i]n order to raise evidence that his failure to appear arose through no fault on his part in the context of an incarceration in a foreign country, the non-movant must offer some proof that he has not been convicted of the alleged actions that serve as the basis for the incarceration." *Id.*

In this case, the uncontrollable circumstance is deportation rather than incarceration in another jurisdiction; nonetheless, we are guided by the court's analysis. We must determine whether Cuellar's deportation, which prevented him from appearing before the court, arose from no fault on his part. Here, there is no evidence of why

the I.N.S. took custody of Cuellar and why he was subsequently deported. Appellants have failed to make an adequate showing of no fault under article 22.13(3). Because appellants did not establish that Cuellar's failure to appear was due to an uncontrollable circumstance that arose from no fault on his part, the trial court did not err in refusing to exonerate appellants from liability under the bond. Appellants' second issue is overruled.

The judgment nisi and the subsequent judgment declaring forfeiture are AFFIRMED.