NUMBERS

13-99-732-CV

13-99-733-CV

13-99-734-CV

13-99-735-CV

13-99-736-CV

COURT OF APPEALS

THIRTEENTH DISTRICT OF TEXAS

CORPUS CHRISTI

__________________________________________________________________


OCTAVIO CASTANEDA, D/B/A O. CASTANEDA'S BAIL BONDS COMPANY , Appellant,


v.



THE STATE OF TEXAS , Appellee.

__________________________________________________________________


On appeal from the Jail Court

of Hidalgo County, Texas.

__________________________________________________________________


O P I N I O N

Before Justices Dorsey, Castillo, and Cantu (1)

Opinion by Justice Dorsey



This group of cases involves, essentially, one issue. That is, "Is a bail bondsman liable on the bond when the principal is
deported prior to the time the principal is set to appear in court?" We hold that where the bail bondsman assumes the risk
that the principal will be deported, as here, he is liable on the bond.

This case involves five bail bonds issued by Castenda's Bail Bonds Co. Four of them contained the express notation,

Principal is in violation of Code of Federal Regulations Title "8" C.F.R. Section 315(3) and (4) I.N.S. Pursuant to new law,
will be taken into custody by: I.N.S. to Los Fresnos, Texas.

The notation was conspicuously located on the bail bond forms, and was typed in all capital letters. 

After the bonding company issued the bonds, the principals were detained by I.N.S. and, ultimately, deported. The
principals, obviously, did not then show up in court according to the terms of the bonding agreement. Upon the States'
motion, the bonding company was held liable to pay the full amounts of the bonds because the principals failed to appear.
The bonding company raises various arguments why it should not be held liable on the bonds. We are not persuaded by
these arguments.

First, the bonding company argues, that the fact that the government did not actually release the principals invalidates the
bonding agreement in its entirety. Under article 22.13(a) of the code of criminal procedure, a surety may be exonerated for
forfeiture liability when a "bond is, for any cause, not a valid and binding undertaking in the law." Tex. Code Crim. Proc.
Ann. art. 22.13(1) (Vernon 1989). This argument has been addressed by this Court before. See Reyes v. State, 31 S.W.3d
343, 345-46 (Tex. App.--Corpus Christi 2000, no pet.). In Reyes, we held that the government's failure to release the
principal relates to the performance of a bail bond and not to its validity. Id. Thus, the surety is not exonerated. We
overrule this argument.

Next, the bonding company argues that the State, by deporting the principals on the bonds, impermissibly increased the risk
assumed by the bonding company after the bonds were already made. Because these bonds contained language indicating
that the bonding company expressly assumed the risk that the principals would be deported by I.N.S., we disagree.

"A 'bail bond' is a written undertaking entered into by the defendant and his sureties for the appearance of the principal . . .
before some court or magistrate to answer a criminal accusation . . . ." Tex. Code Crim. Proc. Ann. art. 17.02 (Vernon
1977). As such, a bail bond is a contract between the surety (the bonding company) and the State. Reyes, 31 S.W.3d at
346. The contract consists of a promise by the surety that the principal will appear before the court in exchange for a
promise by the State that it will release the principal. Id.

The United States Supreme Court has noted that:

There is . . . an implied covenant on the part of the government, when the recognizance of bail is accepted, that it will not in
any way interfere with this covenant between them, or impair its obligation, or take any proceedings with the principal
which will increase the risks of the sureties or affect their remedy against him.

Reece v. United States, 76 U.S. 541, 511, 9 Wall. 13 (1869). Thus, as a general rule, if the government has taken a
unilateral action that will increase the surety's risk on a bond or make it impossible for the bondsman to produce the
principal in compliance with the terms of the bond, the government cannot enforce the forfeiture of the bond against the
surety. Id. However, in this case, the inclusion on the bond forms themselves of language indicating the principals were
then subject to I.N.S. proceedings indicates that the bonding company voluntarily assumed the risk that the principals
would be deported. Under basic rules of contract interpretation, we give terms their plain, ordinary, and generally accepted
meaning unless the instrument shows that the parties intended otherwise, and we presume that the parties to a contract
intended every clause to have some effect. Ogden v. Dickinson State Bank, 662 S.W.2d 330, 332 (Tex. 1983); Western
Reserve Life Ins. Co. v. Meadows, 152 Tex. 559, 261 S.W.2d 554, 557 (1953). We hold that inclusion of that language
indicates that the risk of deportation was a part of the bargained-for exchange reflected in the bonding contracts.
Accordingly, we overrule this issue and affirm the trial court's judgments holding the bonding company liable on the bonds
in cause numbers 13-99-00733-CV, 13-99-00734-CV, 13-99-00735-CV and 13-99-00736-CV.

Next, we address the bonding company's arguments with regard to the bond at issue in cause number 13-99-00732-CV.
That bond did not contain the express notation that the principal was subject to I.N.S. action contained on the face of the
other bonds. In that case, a different analysis applies, but we reach the same result. We hold the surety is liable on this
bond as well.

Texas Code of Criminal Procedure article 22.13(3) states that a surety will be exonerated from liability upon a bond
forfeiture because of "[t]he sickness of the principal or some uncontrollable circumstance which prevented his appearance
at court . . . ." Tex. Code Crim. Proc. Ann. art. 23.13(3) (Vernon 1989). However, in order for that provision to exonerate
the bondsman, it must be shown that the principal's failure to appear arose from no fault on his part. Id. Thus, the statute
places the burden on the surety to show that it was not at fault for the principal's failure to appear.

At the hearing on the bond forfeitures, the State argued, with no rebuttal by the bonding company, that in each case the
bonding company was aware at the time it entered into the bonding agreement that the principal was subject to I.N.S.
proceedings. Even in the case of the bonding agreement that did not contain the express language acknowledging the
pending I.N.S. proceeding, the bondsman was aware at the time the bond was written that the principal was subject to
I.N.S. proceedings. We cannot say that a bondsman who voluntarily assumes the risk that the principal will be deported
has no fault in the subsequent failure of the principal to appear in court at the appointed time. Accordingly, we overrule
this point as well. Forfeiture of the bond in cause number 13-99-00732-CV is affirmed.

By its final point, the bonding company argues that the trial court erred in awarding interest on the judgment of forfeiture.
The State agrees that the trial court's judgment was incorrect in its award of interest, but that rather than awarding no
interest, the court should have awarded interest to be calculated from a different date. According to Dees v. State, 865
S.W.2d 461, 463 (Tex. Crim. App. 1993), interest accrues on the bond amount beginning on the date of forfeiture, which is
the date the trial court signs the judgment nisi. The trial court's judgments in this case conform exactly to the standards set
forth in Dees. Thus, we affirm them in all respects.



______________________________

J. BONNER DORSEY,

Justice



Concurring opinion by Justice Castillo.

Publish .

Tex. R. App. P. 47.3(b).



Opinion delivered and filed

this 31st day of August, 2001.

1. Senior Justice Antonio G. Cantu assigned to this court by the Chief Justice of the Supreme Court of Texas pursuant to
Tex. Gov't Code Ann. § 74.003 (Vernon 1998).







NUMBER 13-00-713-CV

COURT OF APPEALS

THIRTEENTH DISTRICT OF TEXAS

CORPUS CHRISTI

___________________________________________________________________


DESIREE GARZA , Appellant,


v.



CARL BLANTON , Appellee.

___________________________________________________________________


On appeal from the 28th District Court

of Nueces County, Texas.

__________________________________________________________________



DISSENTING OPINION

Before Chief Justice Valdez and Justices Yañez and Castillo

Dissenting Opinion by Justice Castillo



I respectfully dissent. I would hold that the trial court abused its discretion by not ordering retroactive child support. While
it is true that Mr. Blanton paid Ms. Garza some monies prior to the entry of the final judgment, the evidence before the trial
court militates in favor of ordering retroactive child support. 

Section 160.005 of the Texas Family Code provides that, upon a finding of parentage in a paternity action, the trial court
may order support retroactive to the time of the birth of the child. Tex. Fam. Code Ann. § 160.005(b) (Vernon1996). In
making an award for retroactive child support under this section, the trial court shall use the child support guidelines
provided by chapter 154 of the code, together with any relevant factors. Id. § 160.005(c).

Section 154.131 of the code provides that the child support guidelines are intended to guide the court in determining the
amount of retroactive child support, if any, to be ordered. Id. § 154.131(a). 

In determining whether to order retroactive child support, the court must consider the net resources of the obligor during
the relevant time period and whether: (1) the mother had made any previous attempts to notify the biological father of his
paternity or probable paternity; (2) the biological father had knowledge of his paternity or probable paternity; (3) the order
of retroactive child support will impose an undue financial hardship on the obligor or the obligor's family; and (4) the
obligor had provided actual support or other necessaries before the filing of the action.

Id. § 154.131(b)(1)-(4); see also id. §154.123(b)(1)-(17) (listing nonexclusive factors court may consider in applying
guidelines). The trial court's decision whether to award retroactive child support is discretionary. Id. §§154.131(a),
160.005(b). An abuse of discretion occurs when the trial court acts without reference to any guiding rules or
principles.Downer v. Aquamarine Operators, Inc., 701 S.W.2d 238, 241-42 (Tex. 1985). The test is whether the trial
judge's action was arbitrary or unreasonable. Id. at 242. 

In this case, the evidence before the court proved that Mr. Blanton was aware of Ms. Garza's pregnancy and that he was the
biological father. The subject child was born on September 4, 1999. Ms. Garza filed her paternity action on November 1,
1999. It is undisputed that temporary orders were entered pursuant to a hearing on May 31, 2000 in which the court
ordered temporary child support in a sum which omitted part of Mr. Blanton's net resources absent his full disclosure.
During the final hearing on August 18, 2000, Ms. Garza testified that the $2,000 lump sum Mr. Blanton paid some time in
July 1999, while she was pregnant, was to help her with bills. She explained that bills were overdue since her doctor
ordered her not to work during her pregnancy due to hemorrhaging. She added that she used the money to make three
vehicle payments, buy groceries and pay her light, gas, telephone, and water bills. She further testified, without
contradiction, that the $275 sum was court-ordered child support and part of the remaining payments Mr. Blanton made
"were attorney fees." 

The record establishes that Mr. Blanton was gainfully employed. He made no medical payments before or after the
pregnancy. Previously ordered to provide medical insurance, he had not complied although health insurance was available
for the child through his employer. When asked if he could make a lump sum payment if so ordered, Mr. Blanton admitted
that, although difficult, he had the ability to pay. He testified that "incidental" to the paternity proceedings initiated by Ms.
Guzman, he had recently transferred over $300,000 from a four-year-old personal injury settlement to his wife, a
conveyance that the trial court nullified in the final judgment without objection. 

In the final judgment, the trial court also ordered Mr. Blanton to pay $551.84 per month in child support to begin on August
18, 2000, the date of the final hearing. Not ordering retroactive child support where, as here, the subject child's father made
a cursory effort to meet his court-ordered child support obligations while gainfully employed and with access to $300,000
is unreasonable. I would hold that the trial court abused its discretion in not ordering retroactive child support. 

ERRLINDA CASTILLO

Justice





Publish .

Tex. R. App. P. 47.3.



Dissenting Opinion delivered and filed

this 31st day of August, 2001.