EDITH H. JONES, Chief Judge,
specially concurring:
I concur in the judgment only. With due respect to the majority, Hood and Katz may dispose of any Eleventh Amendment sovereign immunity claim that Texas could raise here,[1] but those cases do not resolve whether the Bankruptcy Code in fact authorizes the discharge of Soileau’s defaulted bail bonds. Currently, this court’s precedent equates default on bail bonds with any other contractual obligation and holds such debts dischargeable. Hickman v. Texas (In re Hickman), 260 F.3d 400, 406 (5th Cir.2001). The State has consistently argued, however, and I agree that Hickman was wrongly decided. While this panel is bound to apply Hickman and reject the State’s nondischarge-ability claim, I urge the court to rehear this case en banc and overturn Hickman.
Standing alone, the Bankruptcy Code appears to render Soileau’s debt for bond forfeitures nondischargeable. Section 523(a)(7) of the Code states that a debt is nondischargeable “to the extent such debt is for a fine, penalty, or forfeiture payable to and for the benefit of a governmental unit, and is not compensation for actual pecuniary loss, other than a tax penalty.” 11 U.S.C. § 523(a)(7) (emphasis added). The panel in Hickman interpreted this language to mean that only “punitive or penal forfeiture[s]” were nondischargeable, and that bail bond forfeitures, which it erroneously interpreted as contractual in nature, were not covered by § 523(a)(7). Id. at 406.
A better approach to § 523(a)(7) was taken by a Third Circuit panel (including *314 now-Justice Alito) that held commercial bail bond forfeitures nondischargeable within the plain meaning of § 523(a)(7). Dobrek v. Phelan, 419 F.3d 259 (3d Cir.2005). As Dobrek correctly points out, regardless whether bail bonds are contractual in nature, there is no basis for Hickman’s holding that § 523(a)(7) “is restricted in scope to exempt from dis-chargeability only obligations of a [purely] penal nature,” as “forfeitures” are included in § 523(a)(7) without respect to then-nature. Dobrek, 419 F.3d at 267 (quoting City of Philadelphia v. Nam (In re Nam), 273 F.3d 281, 287 (3d. Cir.2001)). That Soileau owes a forfeiture debt to a governmental entity should be dispositive here.
Moreover, state criminal proceedings are not the “usual case” in bankruptcy, and the Supreme Court has refused to allow bankruptcy jurisdiction to interfere with this traditional realm of state authority. In Kelly v. Robinson, 479 U.S. 36, 107 S.Ct. 353, 93 L.Ed.2d 216 (1986), the Supreme Court noted its “deep conviction that federal bankruptcy courts should not invalidate the results of state criminal proceedings. The right to formulate and enforce penal sanctions is an important aspect of the sovereignty retained by the States.” Id. at 47, 107 S.Ct. at 360. Neither Hood nor Katz conflicts with Kelly, whose authoritativeness we inferior courts must recognize. Thus, the question whether bail bond forfeitures in Texas are criminal matters is critical to determining the scope of § 523(a)(7). In this regard, Hickman seriously misinterpreted Texas law when it held that bail bonds are essentially contractual, not penal, obligations.
As early as 1854, in Gay v. State, 20 Tex. 504 (1857), the Texas Supreme Court classified bail bond forfeitures as criminal matters. Again, in Jeter v. State, 86 Tex. 555, 26 S.W. 49 (Tex.1894), the Texas court concluded that a proceeding for the forfeiture of bail bonds is “a criminal case within the Constitution and laws of the State.” 86 Tex. at 557, 26 S.W. 49 (citing Gay). As seminal criminal law precedents, Gay and Jeter have been repeatedly reaffirmed in recent years. See, e.g., Ex Parte Burr, 185 S.W.3d 451, 452-53 (Tex.Crim.App.2006); Bailout Bonding Co. v. State, 797 S.W.2d 275, 277 (Tex.App.1990); State v. Sellers, 790 S.W.2d 316, 321 (Tex.Crim.App.1990); State ex rel. Vance v. Routt, 571 S.W.2d 903, 906 (Tex.Crim.App.1978)(“[There is] no doubt that a bond forfeiture proceeding is ‘criminal in nature.’ ”).
Hickman’s, conclusion that “[b]ail bond judgments are not penal sanctions ... but rather arise from a contractual duty,” is thus at odds with over a century of Texas precedent. Hickman, 260 F.3d at 406. The panel in Hickman relied almost exclusively upon Reyes v. State, 31 S.W.3d 343 (Tex.App.2000), a state appeals court decision which held that “[b]ail bonds are contracts between the surety and the State.” Id. at 345. Based on Reyes, Hickman reasoned that the State’s classification of bail bonds as forfeitures (ie., criminal in nature) was a mere “label,” masking their contractual nature. Hickman, 260 F.3d at 405. Such reliance on Reyes was in error. First, the conclusion in Reyes that bail bonds are contractual in nature must be put in context. Reyes concerned a bondsman whose client had absconded; the bondsman wished to be released from liability to the State. The Reyes court held only that the Texas Code of Criminal Procedure would not allow the bondsman to be released from his obligation to the State absent a showing that the bonded defendant failed to appear in court due to “an uncontrollable circumstance that arose from no fault on his [the defendant’s] part”; it did not purport to overrule nearly one hundred fifty years of state precedent. Reyes, 31 S.W.3d at 346-47. Further, if *315 Reyes did in fact re-examine the nature of bail bonds in Texas, it did so without a single mention of Gay, Jeter, or their progeny.
Bailout Bonding, another Texas Court of Appeals case, provides a more complete assessment of the State’s practices. There, the court noted that although “the surety’s liability on the appearance bond would appear to be contractual,” in actuality, the “judgment on a bond is not in the nature of a violation of contract.” Bailout Bonding, 797 S.W.2d at 277. Bailout Bonding relied upon General Bonding & Casualty Insurance Co. v. State, 73 Tex.Crim. 649, 165 S.W. 615 (1913), which held that though “the action [on the forfeiture of an appearance bond] is not directly to punish the offender ... it partakes of punishment for an offense against the state, and is not in the nature of a violation of a contract.” Id. at 617. In Texas, notwithstanding that the Texas Code of Criminal Procedure Article 22.10 applies certain civil court rules to bail bond proceedings, forfeiture judgments have always been regarded as “penal judgments], that is, a judgment in the nature of a fíne.” Bailout Bonding, 797 S.W.2d at 277; see also Magless v. State, 112 Tex.Crim. 646, 18 S.W.2d 669, 670 (1929) (“It is plain, we think, that the sum recoverable for noncompliance with the conditions of a bail bond is a penalty.”). In sum, even if the initial relationship between a surety and the State has elements of contract according to Reyes, a forfeiture judgment does not, and is instead a criminal matter.
Finally, assuming arguendo that bail bonds are contracts, even the Hickman panel conceded that a “bail bond contract is sui generis,” and “is certainly distinguishable from the typical contract.” Hickman, 260 F.3d at 406. Hickman correctly noted that a bail bond is an “integral and essential tool in the administration of the State’s criminal justice system.” Id. Regardless whether the forfeiture judgment is against a criminal defendant or his sureties, “[a criminal] case is too closely connected with the judgment on the bail bond to be separable from it.” Jeter, 86 Tex. at 558, 26 S.W. 49. A bail bond proceeding concerns “an instrument to coerce the accused to take his trial; a power incident to every criminal court”, and not a mere civil contract. Id.
The fear expressed in Kelly, that the bankruptcy courts would “invalidate the results of state criminal proceedings by erasing debts” is made reality if Soileau is granted a discharge from her debts to the State. Dobrek, 419 F.3d at 265. If bail bondsmen can obtain discharge in bankruptcy of forfeited bond debts, they plainly have less incentive to supervise and assure the appearance of their clients at trial.
Hood and Katz stand for the proposition that a state may be treated as an ordinary creditor in bankruptcy as to its “usual” contractual debts, but they do not answer the statutory question raised here. Informed by Kelly, I would hold that a bankruptcy court may not utilize its in rem jurisdiction to ride roughshod over this traditional bastion of state sovereignty, and I hope that our court will take this case en banc to reconsider Hickman and preserve the integrity and self-sufficiency of the State’s criminal procedures.

. The majority’s conclusion is probably correct; nevertheless, the scope of Tennessee Student Assistance Corp. v. Hood, 541 U.S. 440, 124 S.Ct. 1905, 158 L.Ed.2d 764 (2004), is not unlimited. The Supreme Court specifically noted that it was not holding that every "exercise of a bankruptcy court’s in rem jurisdiction will not offend the sovereignty of the State.’’ Id. at 451 n. 5, 124 S.Ct. at 1913. Although the Court's broader decision in Central Virginia Community College v. Katz, 546 U.S. 356, 126 S.Ct. 990, 163 L.Ed.2d 945 (2006), made clear that even actions ancillary to a bankruptcy court’s exercise of its in rem jurisdiction will not "in the usual case” offend state sovereignty, the Court did not permit bankruptcy courts always to exercise their jurisdiction without regard to state sovereignty. Id. at 1000. Contractual debts owed to the State are now fair game for bankruptcy resolution, but Katz and Hood recognize that there are still areas of traditional state sover-eignly into which the bankruptcy courts cannot tread. See also, State of Texas v. Walker, 142 F.3d 813 (5th Cir.1998). Thus, it could be argued that the mere fact that this case concerns an in rem proceeding in bankruptcy does not end this court's analysis if the bankruptcy court’s exercise of in rem jurisdiction offends traditional state sovereignty over its criminal justice system.