Reversed and Remanded, and Opinion filed July 22, 2008








 

Reversed
and Remanded, and Opinion filed July 22, 2008.

 

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-06-00906 -CV

NO. 14-06-00907 -CV

____________

 

GRIMES COUNTY BAIL BOND BOARD, Appellant

 

V.

 

SONNY ELLEN D/B/A SONNY ELLEN BAIL BONDS, Appellee

 

 



 

On Appeal From The 12th District Court

Grimes County, Texas

Trial Court Cause No. 30,088 and 30,140

 



 

O P I N I
O N








The
Grimes County Bail Bond Board suspended and later revoked Sonny Ellen=s bail bond surety license after he
failed to disclose unpaid judgments for bail bond forfeitures in his license
application.  In a de novo appeal, the trial court found that Ellen had
failed to pay judgments but nonetheless reinstated his license.  Because Ellen
had unpaid judgments at the time of trial, the trial court abused its
discretion in reinstating his license.  We therefore reverse the trial court=s judgment and remand for further
proceedings consistent with this opinion.

BACKGROUND

The
Board issued a bail bond surety license to Sonny Ellen in April 2005.  Two
months later, the Board suspended Ellen=s license for failing to pay or
supersede 26 judgments and instructed him to pay all outstanding judgments to
avoid license revocation.  In 23 of those cases, Ellen filed special bills of
review in which he sought to reduce the amounts owed.[1] 
On July 8, 2005, those special bills were denied.  Ellen subsequently paid most
B but not all B of the outstanding judgments.








The
Board revoked Ellen=s license on July 15, 2005 for failing to pay judgments
pursuant to Occupations Code sections 1704.204 and 1704.252.[2] 
Ellen appealed the Board=s decision to the district court, which conducted a trial de
novo on appeal.  The court found that Ellen failed to pay judgments in
accordance with Occupations Code section 1704.204, which is a stated reason for
suspending or revoking a bail bond surety license.  See Tex. Occ.
Code Ann. ' 1704.252(8) (Vernon 2004).  The court interpreted section 1704.252 to
provide discretion to reinstate, which it employed to reinstate Ellen=s license.  The Board appealed.[3]

                                                       STANDARD
OF REVIEW

A bail
bond licensee may appeal a board order suspending or revoking a license by
filing a petition in the trial court.  Tex. Occ. Code Ann. ' 1704.255(a) (Vernon 2004).  The
trial court is to review the appeal Aby trial de novo in the same manner
as an appeal from a justice court to a county court.@  Tex. Occ. Code Ann. ' 1704.256 (Vernon 2004).  Therefore,
in the district court both sides present evidence to the trial judge for a
determination on the evidence introduced.  See Harris County Bail Bond Bd.
v. Burns, 881 S.W.2d 61, 62 (Tex. App.CHouston [14th Dist.] 1994, writ
denied).  The board=s decision to revoke a license enjoys no deference during the
de novo appeal.  See id.  Instead, the trial court is vested with
full power to determine the issues and rights of all parties, and to try the
case as though it had been filed originally in that court.  See Harris
County Bail Bond Bd. v. Blackwood, 2 S.W.3d 31, 33 (Tex. App.CHouston [1st Dist.] 1999), rev=d on other grounds, 41 S.W.3d 123 (Tex. 2001).[4]

We
review the trial court=s factual findings under the same standards that would be
used in reviewing the legal or factual sufficiency of the evidence supporting a
jury=s answer to a jury question.  Blackwood,
2 S.W.3d at 33 (citing Catalina v. Blasdel, 881 S.W.2d 295, 297 (Tex.
1994)).  In reviewing the trial court=s conclusions of law, we will uphold
on any legal theory supported by the evidence.  Burns, 881 S.W.2d at 62.








                                                                    ANALYSIS

The
governing statute provides that A[a]fter notice and hearing, a board
may revoke or suspend a license if the license holder ... fails to pay a
judgment in accordance with Section 1704.204.@  Tex. Occ. Code Ann. ' 1704.252(8).  Section 1704.204
requires a bondsman to pay a final judgment on a bail bond forfeiture not later
than the 31st day after the date of the final judgment unless such judgment has
been appealed, in which case the bondsman must deposit with the court either
cash or a supersedeas bond in the amount of the judgment.  See id. ' 1704.204(a).

In 1994,
we examined the predecessor statute to section 1704.252 and concluded that a
trial court may not renew the license of a bondsman who has failed to pay or
supersede judgments arising from bond forfeitures.  Burns, 881 S.W.2d at
64.  The only choices in that circumstance are revocation or suspension.  See
generally id. at 64B65 (applying the grounds for revocation or suspension to
license renewal).  We rejected a suggested interpretation that would have
allowed a board or trial court to permit persons to work as bondsmen even
though they were statutorily disqualified from doing so.  See id. at
63.  We concluded that such a statutory interpretation would defeat the
legislative purpose of protecting the public=s interest in securing the appearance
of the accused.  See id.; In re Canales, 52 S.W.3d 698, 702 (Tex.
2001) (orig. proceeding) (court may consider the statute=s objectives and the consequences of
a particular construction).








Almost a
decade later, we concluded that Burns survived the Legislature=s 1999 recodification of the bail
bond act.  See Ellen v. Brazos County Bail Bond Bd., 127 S.W.3d 42, 47B48 (Tex. App.CHouston [14th Dist.] 2003, no pet.). 
We presume that the Legislature knew of our interpretation in Burns when
it recodified the statute.  See Coastal Indus. Water Auth. v. Trinity
Portland Cement Div., 563 S.W.2d 916, 918 (Tex. 1978).  The recodified
statute carried forward the same language we interpreted in Burns, thereby
indicating a legislative adoption of our prior construction.  See id.

Although
Burns involved license renewal rather than suspension or revocation, the
legal justifications for refusing to renew a license apply with equal force to
suspension or revocation.  See id. at 64B65.  Ellen candidly acknowledges
that, under Burns=s interpretation of the bail bond act, the trial court could
not reinstate his license; its only choices were to suspend or revoke his
license based upon the presence of unpaid, unsuperseded judgments.  He urges us
to overrule Burns, contending that the decision violates the Code
Construction Act=s definition of the term Amay;@ defeats the purpose of de novo
appeal; and renders an accompanying statutory provision meaningless.

We
decline the invitation to overrule Burns, and we re-affirm that the bail
bond act gives a trial court discretion to choose between suspending or
revoking the license of a bondsman who has unpaid judgments at the time of the de
novo hearing.  The trial court does not have discretion to reinstate a
license because the statute does not provide this option under these
circumstances.  We reach this conclusion based not only on the continuing
vitality of Burns, but also because of the statute=s unambiguous language.

A.        Stare Decisis








Given Burns,
a discussion of stare decisis is warranted at the outset.  Our prior
opinions have continuing authority, even when a party contends that a precedent
was incorrectly decided.  See Guest v. Cochran, 993 S.W.2d 397, 404 n.6
(Tex. App.CHouston [14th Dist.] 1999, no pet.).  We generally adhere to our
precedents pursuant to stare decisis because consistency promotes
efficiency, fairness, and legitimacy.  See Weiner v. Wasson, 900 S.W.2d
316, 320 (Tex. 1995).  If we did not follow our own decisions we would not be
giving due consideration to the settled expectations of litigants because no
issue could ever be considered truly resolved.  See id.  In addition,
the legitimacy of the judiciary rests in significant part Aupon a stable and predictable
decisionmaking process.@  Id.

Stare
decisis is strongest
in cases involving statutory construction because the Legislature may correct
perceived construction errors through statutory amendment.  See Fiess v.
State Farm Lloyds, 202 S.W.3d 744, 749B50 (Tex. 2006).  As noted above, the
Legislature met after Burns was issued and recodified the bail bond act
without substantive change.  See Tex. Occ. Code Ann. ' 1.001 (Vernon 2004).  We therefore
presume that the Legislature intended the same construction to continue to
apply.  See Fiess, 202 S.W.3d at 749B50.  This presumption underscores
that Burns was correctly decided.

In light
of Ellen=s challenge to the correctness and
wisdom of Burns, however, we do not rely solely upon stare decisis
in concluding that the trial court lacked discretion to reinstate Ellen=s license in the face of unpaid
judgments.  We reach this decision because we adhere to our precedent, and
because this result is dictated by legislative intent reflected in the
operative statutory language.

B.        Statutory Construction

In
construing a statute, our primary goal is to determine and effectuate
legislative intent.  Canales, 52 S.W.3d at 702.  If a statute is clear
and unambiguous, we need not resort to rules of construction.  Id.  We
may consider, among other things, the statute=s objectives and the consequences of
a particular construction.  Id.  We read the statute as a whole and
interpret it to effectuate every part.  See City of Houston v. Jackson,
42 S.W.3d 316, 319B20 (Tex. App.CHouston [14th Dist.] 2001, pet. dism=d w.o.j.).








Ellen
focuses on the word Amay@ in the phrase Amay revoke or suspend@ appearing in section 1704.252. 
Ellen argues that Amay@ is permissive rather than mandatory so as to give a trial
court discretion to reinstate if it so chooses.  Ellen stresses that the term Amay@ signifies Adiscretionary authority or grants
permission or a power.@  See Tex. Gov=t Code Ann. ' 311.016(1) (Vernon 2005).  This is
true as far as it goes B but it does not go as far as Ellen contends.  

The word
Amay@ must be analyzed, but it must not be
analyzed in isolation; statutory context must be considered.  See, e.g.,
Aaron Rents, Inc. v. Travis Cent. Appraisal Dist., 212 S.W.3d 665, 671
(Tex. App.CAustin 2006, no pet.) (A[W]hether a statute requires the imposition of attorney=s fees or vests the trial court with
the discretion to decide does not depend exclusively on whether the statute
uses the word >may= or >shall.=@); BWI Cos. v. Beck, 910 S.W.2d 620, 623 (Tex. App.CAustin 1995, orig. proceeding [mand.
overruled]).  Additionally, the Code Construction Act does not elevate any
particular rule over another.  See Tex. Gov=t Code Ann. ' 311.003 (Vernon 2005).  We note that
several other provisions of the Code Construction Act support our conclusion in
this case, including:

$          The entire statute is presumed to be effective.  Id. ' 311.021(2).

$          A just and reasonable result is intended.  Id. ' 311.021(3).

$          Public interests are favored over private interests.  Id.
' 311.021(5).

$          The Court may consider the objects to be attained and the
consequences of a particular construction.  Id. ' 311.023.

 

We agree that the word Amay@ vests the trial court with
discretion, but that discretion does not encompass reinstatement.








Section
1704.252=s key language provides that Aa board may revoke or suspend
a license if the license holder ... fails to pay a judgment[.]@  Tex. Occ. Code Ann. ' 1704.252(8) (emphasis added).  This
language is unambiguous.  It gives the trial court discretion to choose between
revocation and suspension.  It does not give the trial court discretion to
choose a reinstatement option that is nowhere mentioned in section 1704.252. 
The word Amay@ cannot be divorced from its surrounding language to change the statute=s meaning, or to add an option the
statute does not provide under these circumstances.  See Jones v. Liberty
Mut. Ins. Co., 745 S.W.2d 901, 902 (Tex. 1988); see also Morales v.
Liberty Mut. Ins. Co., 241 S.W.3d 514, 517B18 (Tex. 2007) (requiring that
statutes be read in context).

Section
1704.252=s unambiguous language effectuates
the statute=s purpose.  The bail bond act was intended to ensure the financial
security and integrity of bondsmen, Awhose business the Act deems to be in
the public interest aimed at securing the appearance of the accused.@  Burns, 881 S.W.2d at 63; Blackwood,
41 S.W.3d at 128.  Consistent with that purpose, the Act B when read as a whole B evinces a consistent legislative
intent to prevent bondsmen with unpaid judgments from continuing to issue bail
bonds.  See, e.g., Code Crim. Proc. Ann. art. 17.11, ' 2 (Vernon 2005) (disqualifying
defaulting sureties from signing as sureties on additional bonds). 
Accordingly, license applicants must disclose any unpaid judgments; until such
judgments are paid, applicants are expressly barred from licensure.  See
Tex. Occ. Code Ann. ' 1704.154(b), (d).  Had Ellen disclosed the unpaid judgments,
the Board would have been required to deny his application.  See Blackwood,
41 S.W.3d at 126 (AThe Act therefore makes all application requirements
mandatory.@).  We will not embrace an interpretation of section 1704.252 that
ignores unpaid judgments foreclosing Ellen=s licensure.

Enforcement
of the bail bond act=s unambiguous provisions is important for the proper
functioning of the bail mechanism.  Bail is the security a criminal defendant
gives to evidence his promise that he will appear and answer the accusations
brought against him.  Tex. Code Crim. Proc. Ann. art. 17.01 (Vernon 2005).  The
primary purpose of a bail bond is to secure the presence of the defendant in
court for trial on the offense with which he has been charged.  McKenna v.
State, 247 S.W.3d 716, 719 (Tex. Crim. App. 2008).








Bail
bonds are contracts between the surety and the State of Texas.  Reyes v.
State, 31 S.W.3d 343, 345 (Tex. App.CCorpus Christi 2000, no pet.).  The
contract consists of the surety=s promise that the defendant will appear before the court.  See
id. at 346.  Forfeiture judgments recognize that the State may incur costs
or suffer inconvenience in re-arresting an accused who fails to appear.  See
McKenna, 247 S.W.3d at 719.  While bail bonds are neither punitive nor a
substitute for fines or revenue devices, they protect the public=s interest by ensuring the defendant=s appearance and encouraging the
surety=s participation in re-arrest when the
defendant does not appear.  See Gramercy Ins. Co. v. State, 834 S.W.2d
379, 381B82 (Tex. App.CSan Antonio 1992, no writ).

Consistent
with this purpose, a proper bail bond must contain the surety=s binder that the defendant will
appear to answer the charges.  Tex. Code Crim. Proc. Ann. art. 17.08, ' 2.  An officer who accepts a bail
bond must verify the sufficiency of the security offered.  Id. art
17.11, ' 1; art. 17.13.  Those who would act
as sureties must pass several eligibility requirements, including possession of
sufficient financial resources; experience in the bail bond business; and
education from an accredited institution of higher learning.  See Tex.
Occ. Code Ann. ' 1704.152.








After
becoming licensed, a bondsman is prohibited from writing bail bonds totaling
more than ten times the value of the deposited security.  Id. ' 1704.203(a).  Further, a bondsman
may not execute additional bail bonds if the amount of liability on pending
judgments nisi equals or exceeds twice the amount of the deposited security.  Id.
' 1704.203(c).  A bondsman must
promptly pay all forfeiture judgments not later than the 31st day after the
date of the judgment, unless superseded on appeal.  Id. ' 1704.204(a).  A licensing board that
learns of unpaid final judgments must immediately notify the sheriff, who is
prohibited from accepting any bonds from that surety until the judgments have
been paid.  See id. ' 1704.2535.  These enforcement provisions protect against a
bondsman=s insolvency.  Font v. Carr,
867 S.W.2d 873, 880 (Tex. App.CHouston [1st Dist.] 1993, writ dism=d w.o.j.).

In light
of this detailed structure, the existence of multiple unpaid judgments is no
mere technicality.  A bondsman=s accumulation of unpaid judgments undermines the entire bail
process.  The Legislature consistently has spoken to prevent defaulting
sureties from continuing to act as bail bondsmen.  Interpreting section
1704.252 to permit reinstatement in the face of unpaid judgments would
eviscerate legislative intent to prevent bondsmen in default from continuing to
issue bail bonds.  See Burns, 881 S.W.2d at 63.

C.        Trial De Novo

Ellen
contends that continued adherence to Burns is incompatible with judicial
review of a board=s decision by trial de novo in the district court.  See
Tex. Occ. Code Ann. '' 1704.255(a), 1704.256.  The basis for this contention is not
clear.  The district court=s power to conduct a trial Ade novo,@ that is, a Atrial anew,@ vests the court with full power to
determine the issues and parties= rights, and to try the case as
though suit had been filed originally in that court.  See Lone Star Gas Co.
v. State, 153 S.W.2d 681, 692 (Tex. 1941); Blackwood, 2 S.W.3d at
33.  The trial court, as the trier of fact, weighs the evidence and assesses
credibility.  See Jones v. Tarrant Util. Co., 638 S.W.2d 862, 866 (Tex.
1982).  The Board=s factual findings, and ultimate determination to revoke,
therefore enjoy no deferential treatment.  See Burns, 881 S.W.2d at 62.








But the
power to try a case de novo does not confer unbridled discretion to pick
an outcome the statute does not specify for a bondsman with unpaid judgments. 
Section 1704.252 limits the trial court=s options if it finds one of the
enumerated statutory violations.  See id. (providing that a license may
be revoked or suspended if the bondsman is found to have committed one
of the listed violations).  The terms Arevoke@ and Asuspend@ are not interchangeable.  A
suspended license is subject to reinstatement if the violation that led to
suspension can be cured.  See, e.g., Tex. Occ. Code Ann. ' 1704.253(a) (providing for
reinstatement of a suspended license after the deposit of additional
security).  By contrast, a bondsman whose license has been revoked must reapply
for a new license.  See, e.g., Austin v. Harris County Bail Bond Bd.,
756 S.W.2d 65, 66 (Tex. App.CHouston [1st Dist.] 1988, writ denied).

Allowing
a trial court to re-hear the evidence and reach its own determination while
confining its options within the boundaries of section 1704.252 harmonizes
statutory language with legislative intent to prevent sureties from issuing
bail bonds while in default of forfeiture judgments.  The trial court need not
make the same ruling as the licensing board.  For example, although a board may
revoke a license for unpaid judgments, the trial court may opt to consider mitigating
factors and decide upon suspension pending payment of the outstanding
judgments.  Moreover, if the license holder can cure a section 1704.252
violation at the time of the de novo hearing by paying outstanding
judgments, the license then may be reinstated because section
1704.252 no longer would require suspension or revocation.  In short, our
interpretation does not conflict with the concept of de novo review.

D.        Role of Section 1704.253

Ellen
argues that our interpretation of section 1704.252 is erroneous because it
renders meaningless an accompanying provision, section 1704.253.  We disagree.








Section
1704.252 provides for ADiscretionary License Suspension or Revocation,@ while section 1704.253 provides for AMandatory License Suspension or
Revocation.@[5]  Ellen contends that interpreting
section 1704.252 to require suspension or revocation B and to exclude reinstatement B makes section 1704.253 meaningless
because this latter provision also requires suspension or revocation.  This
argument fails to recognize that sections 1704.252 and 1704.253 address
different circumstances.

Under
section 1704.252(8), the board Amay revoke or suspend a license@ if the license holder fails to pay
or supersede a judgment.  Under section 1704.253(a), the board Ashall immediately suspend a license@ if the license holder fails to
maintain the aggregate security required under section 1704.160.  Under section
1704.253(b), the board Ashall revoke a license@ if the license holder fails to
maintain the aggregate security required under 1704.160, and also fails to pay
or supersede a judgment.

Section
1704.252(8) vests the trial court with discretion to suspend or revoke a
license if the bondsman fails to pay or supersede a judgment.  See Tex.
Occ. Code Ann. ' 1704.252(8).  In contrast, section 1704.253(a) gives the
trial court no discretion if the bondsman fails to maintain the aggregate
security required under section 1704.160; suspension is the only option. 
Similarly, section 1704.253(b) gives a trial court no discretion if the
bondsman fails to pay or supersede a judgment, and also fails to maintain the
aggregate security required under section 1704.160.  In that latter
circumstance C  which couples an unpaid and unsuperseded judgment with insufficient
aggregate security C  revocation is the only option.  See id. ' 1704.253(b).  Because sections
1704.252 and 1704.253 address different circumstances, our interpretation of
section 1704.252 does not render section 1704.253 meaningless.  See Helena
Chem. Co. v. Wilkins, 47 S.W.3d 486, 493 (Tex. 2001). 

                                                                CONCLUSION








Section
1704.252 vests the trial court with the discretion to revoke or suspend a
bondsman=s license when there are unpaid
judgments.  Because the trial court found that Ellen had unpaid judgments but nevertheless
reinstated his license, we must reverse.  The Board asks that we render
judgment in its favor.  However, we believe that remand is appropriate.  We
remand these proceedings to the trial court for a determination as to whether
Sonny Ellen still has unpaid judgments against him.  If so, the trial court can
decide whether to revoke Ellen=s license or suspend it until all outstanding judgments have
been paid.

Accordingly,
we reverse the July 18, 2006 judgments in cause numbers 30,088 and 30,140, and
remand to the trial court for further proceedings consistent with this Opinion.

 

 

/s/        William J. Boyce

Justice

 

Judgment Rendered and Opinion filed
July 22, 2008.

Panel consists of Chief Justices
Hedges, and Justices Brown and Boyce.









            [1]Filing a special
bill of review does not obviate the bondsman=s
obligation to pay or supersede a forfeiture judgment.  See Tex. Occ.
Code Ann. ' 1704.204(a) (Vernon 2004); In re Casteneda,
No. 04-04-00152-CV, 2004 WL 572355, at *1 (Tex. App.CSan Antonio March 24, 2004, orig. proceeding [mand.
denied]) (mem. op.).





            [2]The Board also
concluded that Ellen made a false statement on his license application.  The
trial court noted on the record that Ellen had answered a license application
question incorrectly, but those comments were not reduced to a formal finding
of fact; therefore, we will not consider them.  See Stevens v. Snyder,
874 S.W.2d 241, 243 (Tex. App.CDallas 1994,
writ denied).  The record does not demonstrate that the Board requested an
additional finding of fact on this ground, and the trial court=s lack of such finding therefore is not preserved for
review.  See Robles v. Robles, 965 S.W.2d 605, 611 (Tex. App.CHouston [1st Dist.] 1998, pet. denied).





            [3]Ellen separately
appealed the Board=s rulings suspending and later revoking his license. 
The trial court consolidated those two de novo proceedings, and we
resolve both together.





            [4]Although the Texas
Supreme Court reversed Blackwood, it nonetheless upheld the principle
that a board=s decision is entitled to no deference.  See Harris
County Bail Bond Bd. v. Blackwood, 41 S.W.3d 123, 127 (Tex. 2001) (A[I]n a de novo proceeding it was necessary that the
[evidence] required by the statute be before the trial court, which was
required to pass on [the license] application without regard to the Board=s decision.@) (emphasis added).





            [5]The title of a
section does not limit or expand the statute=s
meaning.  See Tex. Gov=t Code Ann. ' 311.024.  Accordingly, we will not consider the title
when interpreting the statute.